[Civil No. 3558.  Filed October 22, 1934.]

[37 Pac. (2d) 375.]

C. A. AHRENS, Appellant, v. JAMES H. KERBY, as Secretary of State of the State of Arizona; MELVIN C. GREER, as Clerk of the Board of Supervisors of Apache County, Arizona; W. E. CLARK, as Clerk of the Board of Supervisors of Cochise County, Arizona; GEORGE A. FLEMING, as Clerk of the Board of Supervisors of Coconino County, Arizona; V. C. MURPHY, as Clerk of the Board of Supervisors of Gila County, Arizona; W. L. BUFFINGTON, as Clerk of the Board of Supervisors of Graham County, Arizona; ANNE S. TERRY, as Clerk of the Board of Supervisors of Greenlee County, Arizona; ORRIS HOLDREN, as Clerk of the Board of Supervisors of Maricopa County, Arizona; H. D. PATTILLO, as Clerk of the Board of Supervisors of Mohave County, Arizona; JOHN L. WILLIS, as Clerk of the Board of Supervisors of Navajo County, Arizona; GLADSTONE MacKENZIE, as Clerk of the Board of Supervisors of Pima County, Arizona; C. H. NIEMEYER, as Clerk of the Board of Supervisors of Pinal County, Arizona; WILLIAM G. SIMONTON, as Clerk of the Board of Supervisors of Santa Cruz County, Arizona; KENNETH AITKEN, as Clerk of the Board of Supervisors of Yavapai County, Arizona; WILLIAM B. LINDER, as Clerk of the Board of Supervisors of Yuma County, Arizona, Appellees.

338

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellant.

Mr. Arthur T. La Prade, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, and Mr. W. C. Fields, for Appellees.

McALISTER, J.—One C. A. Ahrens, a citizen and qualified elector of the state of Arizona, filed in the superior court of Maricopa county a complaint seeking to enjoin the Secretary of State from certifying to the clerks of the boards of supervisors of the several counties of the state any number or form of ballot title for a proposed amendment of section 2, article 9, of the Constitution of the state, and, also, to enjoin the clerks of the various boards of super-

visors from printing such number or form, or causing it to be printed, on the official ballot for the general election on November 6, 1934. Immediately after this pleading was filed and upon motion of the plaintiff a temporary restraining order was entered and, following the giving of a bond by the plaintiff, it and an order to show cause were served upon the defendants who answered by interposing a general demurrer to the complaint. Upon a hearing of the issue thus joined the demurrer was sustained and, after the plaintiff had elected not to amend but to stand upon his complaint, judgment was rendered for the defendants and the temporary restraining order dissolved. From this judgment the plaintiff has appealed.

The correctness of the judgment depends upon the sufficiency of the complaint, the substance of which is that the initiative petition proposing to amend the Constitution in the particular mentioned was not legally sufficient under the Constitution and statutes of the state, for the reason that it was not signed by a number of qualified electors equal to, or exceeding fifteen per centum of the total number of votes cast in the state for all candidates for Governor in the last preceding general election. This, it was averred, appeared from the fact that a large number of persons signing the petition were not, at the time they signed it, registered voters in the voting precincts given by them opposite their respective names on said petition as their place of residence, the number thereof being greater than the difference between the total number of names appearing on the petition and fifteen per cent. of the total number cast for all candidates for Governor at the last general election. This allegation and the general demurrer to the complaint containing it present the only issue involved

and that is the question whether or not persons who signed the petition must have been, at the time they did so, registered to vote either at the 1932, or the 1934 election.

Appellant makes only one assignment and that is that the court erred in sustaining the general demurrer and rendering judgment in favor of the defendants, but he gives several reasons for his position though he uses only one of these in argument, and it is:

"It is necessary under the laws of the State of Arizona that one signing an initiative petition be registered to vote at the time of signing in order that his name may be counted on the petition."

He strenuously contends that at the time each person signed the petition in question his name must have appeared on either the 1932 or the permanent registration of 1934, or his signature could not be counted. Appellees, upon the other hand, claim with equal vigor that the correct interpretation of the Constitution and the statutes is that he shall possess only the qualifications section 1, chapter 62, Session Laws of the Eleventh Legislature (1933) provides an elector shall have, and inasmuch as registration is not mentioned as one of these it is not a prerequisite to his signing.

The Constitution itself does not prescribe the qualifications of voters, but does provide in section 2, article 7, that no one shall be entitled to vote at any general election or upon any question that may be submitted to the people unless that person is a citizen of the United States, of the age of twenty-one years or over, and shall have resided in the state one year immediately preceding such election. It further provides in the same section that no person who is under guardianship, is *non compos mentis* or insane, has

been convicted of treason or a felony and whose civil rights have not been restored, shall be qualified to vote. These provisions, it is clear, do not prescribe the qualifications of electors but constitute restrictions or limitations upon the power of the legislature to provide who shall vote, and as long as that body acts within these bounds it may prescribe such qualifications as it thinks wise. In fact, in section 12 of this article 7, it places upon the law-making branch of the government the duty of enacting "registration and other laws to secure the purity of elections and guard against abuses of the elective franchise."

This mandate was carried out by the first legislature and the statutes relative to the "Qualifications and registration of voters," enacted at that time has remained much the same through the years, though in March, 1933, it was repealed by chapter 62, Session Laws of the Eleventh Legislature, and a permanent registration of voters provided for in its stead. Section 1 of this chapter, which is practically the same in meaning as the former provisions on that subject, states in the following language what the qualifications of an elector are:

"Every citizen of the United States, of the age of twenty-one years or over, who shall have been a resident of the state for one year next preceding the election, and of the county and precinct in which he claims the right to vote, thirty days, and who, not being prevented by physical disability from so doing, is able to read the constitution of the United States in the English language in such manner as to show that he is neither prompted nor reciting from memory, and to write his name, shall be deemed to be an elector of the state, and may register to vote at all elections authorized by law, but persons convicted of treason or a felony, unless restored to civil rights, and idiots, insane persons, and persons under guardianship, shall not be qualified to register for any election."

Appellees contend that because this section does not mention registration as one of the qualifications of an elector but provides that one possessing those enumerated therein shall be deemed to be an elector of the state, and may register to vote at all elections authorized by law, registration is not a substantive qualification of an elector, but merely a listing of the qualifications one must have to vote—a regulation of the exercise of that right—and an examination of the authorities cited by them discloses that a number of courts take this view and, we think, correctly so, under their constitution and statutes. *Wilson* v. *Bartlett*, 7 Idaho 271, 62 Pac. 416; *Hindman* v. *Boyd*, 42 Wash. 17, 84 Pac. 609; *In re Sullivan*, 307 Pa. 221, 160 Atl. 853; *Meffert* v. *Brown*, 132 Ky. 201, 116 S. W. 779, 1177; *Minges* v. *Board of Trustees, etc.*, 27 Cal. App. 15, 148 Pac. 816. From this it follows, appellees insist, that a person possessing the qualifi- cations enumerated in this section is an elector and hence, entitled to sign an initiative or referendum petition. Nothing else, it is urged, is necessary to render his signature on a petition valid. The fact that he was not then, and might never be, registered and, therefore in a position to approve or disapprove at the polls a measure he had helped to initiate or refer to the people is, in their view, wholly immate- rial.

Appellant contends, however, that whether regis- tration is a substantive qualification of an elector or not it is just as necessary to enable him to sign a petition initiating or referring a measure as it is to place him in a position to vote on that measure, and to support this view he cites section 1, part 1, article 4 of the Constitution, which reserves to the people the initiative and referendum and contains in some of the fifteen subsections into which it is divided lan-

guage, which, when fairly interpreted, is susceptible of no other construction. A reading of this entire section discloses that in designating those to whom the right to sign initiative or referendum petitions is given, the term "qualified electors" is used and that in pointing out those to whom such petitions shall be referred at the polls for approval or disapproval the same expression is employed except in subsection 10, in which the word "electors" alone appears. And since the words "qualified electors" and even the word "elector" alone, are used in this section to designate those who may pass on a measure at the polls, that is, those legally entitled to vote on it, and since no one may, under other provisions of the law, exercise this right except a person who is registered, it would seem to follow that they were intended to bear the same meaning, to carry the same import, when used to designate those who are given the right to sign petitions. This is a proper deduction to be drawn from the two uses of the expression, for the context does not indicate that it was the purpose of the framers of the Constitution that they should convey one impression in certain subsections and a different one in others.

The use of this term in the same two capacities in article 21 of the Constitution entitled, "Mode of Amending," strengthens this view. The first of the only two sections this article contains provides that any amendment may be proposed by an initiative petition signed by a number of "qualified electors" equal to, etc., and later on states that when an elector or electors shall file with the Secretary of State any proposed amendment, together with a petition therefor signed by a number of "electors" equal to fifteen per centum, etc., the Secretary of State shall submit such amendment to the vote of the people and if the

majority of the "qualified electors" voting shall approve it, it shall become a part of the Constitution. The only impression that may be gained from this is that the words "qualified electors," used in the first part of the section to designate those who may sign a petition proposing an amendment, refer to the same class of people they do lower down in the section when employed to point out who may vote on it, namely, those legally entitled to approve or disapprove it at the polls.

There is nothing in this article suggesting that these words were intended to signify one thing in the one instance and something else in the other, though appellees call attention to the fact that after using them to prescribe who may sign a petition to amend, section 1 requires the Secretary of State to submit an amendment if it is signed by "electors" equal to fifteen per centum, etc., and claim that the use of both terms in the same section to designate who may legally sign a petition shows that they are, as here employed, interchangeable in meaning and, consequently, that an "elector," contrary to the contention of appellant, has the same right as a "qualified elector" to sign a petition. This contention is, perhaps, correct, but the word "electors" alone, just as it does in subsection 10, *supra,* refers here to the same persons the words "qualified electors" used in other parts of this section do, namely, those legally entitled to cast their ballot on the measure. The connection in which these terms appear in this and article 4, that is, their context, as well as the language employed in certain statutory provisions to be presently considered, makes it clear that they both refer, not to persons who merely have the qualifications entitling them to register, but to those who have registered and by so doing placed themselves in a

position to discharge the duty to the state that possession of these qualifications imposes.

The term "electors" alone is used in the Constitution in still other instances to refer to those legally entitled to vote. Section 4 of article 7 provides that "electors" shall in all cases, except treason, etc., be privileged from arrest during their attendance at an "election" and the following section, that no "elector" shall be obliged to perform military duty on a day of election, except, etc. It is plain that reference is here had to persons entitled to vote, since there could be no occasion to except from arrest or military duty, for purposes of the franchise, anyone who had not, by compliance with the registration laws, placed himself in a position to exercise the right thus protected.

Our attention has been called to no provision of the Constitution conveying the impression that its framers intended that the terms, "electors" or "qualified electors," as used throughout article 4, part 1, section 1, should bear a meaning different from that given above, and if any legislative act has attempted to attach such to them, it is ineffective because violative of these constitutional provisions which subsection 15 thereof provides "shall be, in all respects, self-executing."

If one turns to the Revised Code of 1928 to ascertain what the legislature has provided relative to the qualifications of signers of an initiative or referendum petition he will find in section 1753, which is a part of chapter 34 entitled "Initiative, referendum, and recall," that the language employed for this purpose not only fails to depart from the view that articles 4, 7 and 21 of the Constitution show the framers of that document entertained, but that it discloses a legislative mind wholly in conformity there-

with. The first sentence of this section provides that "Every qualified elector of the state may sign a referendum or initiative petition upon any measure which he is legally entitled to vote upon," and it is clear that one who has failed to register, even though he possesses every qualification section 1, chapter 62, *supra,* provides he must have, is not legally entitled to vote on any measure or for any purpose. Under section 1210 et seq. of the Revised Code of 1928, the right to vote is limited to those who have complied with the registration laws. *Lane* v. *Henderson,* 39 Ariz. 457, 7 Pac. (2d) 588.

The use in section 1753 of the term, "any measure which he is legally entitled to vote upon," to designate those who may sign an initiative or referendum petition leaves no question but that the legislature felt that every person who had not, by registering, qualified himself to vote on a measure should be denied the right to sign a petition having the effect of submitting the measure proposed to those who had gained this right by complying with the registration laws. Such a requirement is in harmony, not merely with the spirit of the initiative and referendum, but with the very nature of democratic government itself, because under it the individual is sovereign and exercises his power through the ballot; hence, it is reasonable to presume that it was foreign to the purpose of those who gave form to the Constitution to empower unregistered electors to set in motion the machinery of the law by which measures upon which they themselves could not vote might be brought before those who could. They were evidently of the view that since, in the process of securing the judgment of the voters on a proposed or referred measure, it is just as necessary that a petition to place it on the ballot be filed as it is that a vote on it thereafter be had,

no one should be permitted to aid in accomplishing the former who had not placed himself in a position to take part in the latter, the final solution of the problem.

It is true that one who signs a petition may later register and vote on the measure involved, but this in no way affects the legality of his signature thereon. *Lane* v. *Henderson, supra.* An elector must have the qualifications entitling him to register and vote, such as age, residence, etc., when he signs a petition and since the legislature has prescribed registration as the method by which these are made known, it is plain that his declaration when he registers that he then possesses them is no proof that he had them some days, weeks, or perhaps months back, when he signed the petition. He might, in the meantime, for instance, have become twenty-one years of age or completed his one year's residence in the state. This being true, it follows that there is no way, that is, no practical way, other than by relying on one's registration, to ascertain whether the signers of a petition possess these qualifications and that in consequence an elector who has failed to register and advise the public that he has them, may not legally attach his name to one. The fact that a person might gain this information by making an independent investigation of his own does not meet this need, because it is readily apparent that it was never contemplated by the framers of the Constitution or the members of the legislature that one interested in the sufficiency of a petition should be compelled to engage in the herculean and almost impossible task of making private inquiry of each of the many thousands of signers a petition must have, or of someone acquainted with them, to learn if the required number possesses the necessary qualifications. That regis-

tration would readily disclose these facts and was intended to do so, there can be no doubt, and though it is not one of the qualifications section 1, chapter 62, *supra,* provides an elector must possess, it is, under the Constitution and other provisions of the law, just as much a prerequisite to the signing of a petition as they are.

Subsection 9, section 1, part 1, article 4, *supra,* provides that the date on which a signer attaches his name to a petition must appear thereon and it is evident that one of the principal reasons for this is that those interested in checking the sufficiency of the petition might be able to use the registration as a guide. In doing this, however, they were permitted to use the registration for the preceding election, as well as the one then being made for the following election, because the former did "not die and become *functus officio,* with the general and primary elections of the year" it was made, but held "good 'for the purpose of voting at all elections which are now or may be hereafter authorized by law,' at least until the next succeeding registration period has expired." *Abbey* v. *Green,* 28 Ariz. 53, 235 Pac. 150, 157. Hence, both the preceding registration and "the one in the making, where the election occurs in the registration period, should be the guide as to who is a qualified elector and entitled to vote at recall elections." *Abbey* v. *Green, supra.* This statement, though made when pointing out who could sign a recall petition filed May 26, 1924, and vote at the election held June 28th thereafter, designates with equal definiteness who, before the enactment of a permanent registration law, could legally sign initiative or referendum petitions, because the Constitution requires that such petitions be filed within ninety days after the close of the legislature enacting the

measure they seek to refer, and registration, under the old law, did not begin until the first Monday in May, some two months after the close of the regular session. And this being true, it is perfectly apparent that there was, practically speaking, no way, other than by authorizing those on the preceding registration to sign a petition, by which an act of that session of the legislature could be referred to the people. Such a small percentage of the voters registered between the first Monday in May and the end of the ninety-day period in which referendum petitions might be filed, ordinarily around the 10th of June, that it would have been practically impossible to secure from them the necessary number of signers. And while, it is true, one could not vote on a measure at the following election unless he registered therefor, yet his registration for the preceding election, being good until the one then in the making for the election later on that year had been completed, disclosed that he possessed the necessary qualifications of an elector and placed him in a situation wholly different from that of a person who had registered for neither election.

For the purpose of showing, beyond any possibility of doubt, that the legislature entertained the view that only those who have registered are qualified electors, appellant calls attention to the last expression of that body on the subject, which was made in June of last year and is found in chapter 4 of the acts of the First Special Session of the Eleventh Legislature. The third section of that act reads as follows:

"All persons whose names appear on the register for the last preceding general election, and all persons who have registered under any subsequent registration, shall, if otherwise qualified, be deemed to be

qualified electors for any purpose for which such qualification is required by law."

This is a clear expression of the legislative mind on the subject and though, according to the title of this chapter and the language used in section 1, it was enacted to govern special elections, it is nevertheless important as showing that the members of that body held the view that a person must be registered to be a qualified elector. There is, however, no reason why electors should possess different qualifications for general and special elections, and nothing of the kind was ever contemplated.

Appellees have called our attention to the sense in which the term "qualified electors" is used in chapter 62 of the Eleventh Legislature, which provides for a permanent registration of voters. Section 2 of that act states that the county recorder shall "register without charge, and in accordance with the provisions of this article, any qualified elector who presents himself for such purpose. Qualified electors may in like manner register before any justice of the peace," etc. The legislature undoubtedly had in mind those who possess the qualifications entitling them to register, but regardless of the fact that they employed this term to describe them, it is clear that its use there does not alter the meaning we have seen the Constitution and chapter 34, Revised Code of 1928, dealing with the "Initiative, referendum and recall," intended them to have.

It follows from the foregoing that those who have not registered are not eligible to become signers of a petition and this being true, that the orders of the court sustaining the demurrer and directing judgment for the defendants were erroneous. Due to the necessity for an immediate decision in the matter an order was entered October 6th reversing the judg-

ment and remanding the case with direction that the demurrer be overruled and the temporary restraining order continued in force pending trial, and the foregoing gives the reasons upon which the court's action was based.

ROSS, C. J., and LOCKWOOD, J., concur.