In re STATE QUESTION NO. 215, INITIATIVE PETITION NO. 145.

No. 27284.    April 16, 1940.

Rehearing Denied May 14, 1940.

*102 P. 2d 189.*

Chas. West, of Oklahoma City, for proponents.

McPherren & Maurer, of Oklahoma City, for protestant.

RILEY, J.  This is an appeal from the decision of the Secretary of State holding Initiative Petition No. 145, State Question No. 215, proposing a constitutional amendment providing a graduated land tax, insufficient as not containing a sufficient number of valid signatures.

The protest as filed before the Secretary of State sets forth 19 grounds as cause for rejecting the petition. The first five grounds go to matters pertaining to alleged irregularities, other than the number of qualified signatures on the petition. These matters have apparently been abandoned and are not for consideration here.

The sixth ground of protest is that the petition does not contain a sufficient number of signatures of legal voters to entitle it to be submitted to the people for adoption or rejection.

The remaining grounds go to different specific reasons why signatures to the

petition falling in certain classes should be stricken, such as a large number of pamphlets each containing 20 or less names were not properly verified, in that some of them do not show the county in which verifications were made; some do not show the name of the circulator on the affidavit of verification; some appear to have been verified by one person as circulator while in fact another person was the circulator; also that the names of certain alleged signers were forged, and that some are fictitious; that some signers did not sign their names in the presence of the circulator; that residence or post office addresses of many signers were not given; that the names of many signers are duplicated; that many of the pamphlets making up said petition do not contain a true and correct copy of the petition as filed with the Secretry of State; that a large number of the signers are not legal voters of the state, and finally a charge of fraud on the part of many circulators, such as forgery and false affidavits to the petition.

The protest was heard by the Secretary of State, the result was a finding that the petition did not bear the signatures of a sufficient number of legal voters of the state, and that the petition was insufficient on that account.

The proponents appeal, and the matter comes before this court for a hearing de novo.

It being apparent that the hearing de novo in this court required taking evidence concerning the validity of a vast number of purported signers, the court referred the matter to Honorable P. W. Holtzendorf, Referee, with directions to take evidence and make findings of fact thereon and present such findings of fact together with conclusions of law to this court. Extended hearings were had by the Referee wherein a vast amount of oral and documentary evidence was presented. The record contains 2,000 typewritten pages of evidence besides many exhibits. The hearing extended over a period from November, 1937, to January, 1939. The hearing, however, was interrupted and suspended a number of times by applications to the court to stay proceedings for the determination of questions of law relative to the admission of evidence.

The transcript of the record was not prepared and delivered to the Referee until February 7, 1940. On February 20, 1940, the Referee filed his findings of fact and conclusions of law. (The delay was not in any way the fault of the Referee, but was occasioned by the difficulty in collecting and assembling evidence from the four corners of the state, by agreement of the parties, and delay in briefing.)

The sole issue in this court is whether the petition is properly signed by the requisite number of legal voters of the state.

The findings of the Referee disclose that there was filed with the Secretary of State pamphlets purporting to contain 172,780 signatures to the petition. By admission of the parties it was agreed the total number of signers was 172,632. It was also agreed that 94,250 valid signatures would be sufficient to sustain the petition.

The findings of the Referee show that on the question of alleged signers not being registered voters, protestant caused a list of names of signers on pamphlets circulated in Oklahoma, Blaine, Caddo, Canadian, Cleveland, Comanche, Garfield, Grady, Greer, Jackson, Major, Rogers, Muskogee, and Roger Mills counties, containing in all about 52,417 signatures, to be prepared and checked against the list of registered voters kept in each of said counties, and from the check so made, it appears that 32,991 signers from said counties were not on the registration books or lists in said counties.

Protestant does not claim that the findings of fact or any one of them made by the Referee are not sustained by the evidence. A re-check of the lists from two or three of the counties establishes a considerable percentage of the challenged signers to be registered voters.

In some instances the names were found upon the county registration books and were apparently overlooked by the persons employed by protestant to check the pamphlets against these books. In other instances proponents were able to and did produce registration certificates of challenged signers whose names did not appear on the registration books. This was particularly true of Oklahoma county.

Of approximately 100 names selected at random from the names from Oklahoma county challenged by protestant as not being registered, 48 or 49 were found to be properly registered.

In some of the other 14 counties the registration books were shown to be so incomplete as to be unreliable. This is particularly true of Cleveland and Rogers counties.

But, giving protestant the benefit of every name challenged as not being registered, not more than 32,991 signatures could be stricken as not being legally registered voters. This would leave the petition with 19,726 registered voters as signers in the fourteen counties named.

Protestant contends, however, that the Referee should have found, by the fact that such a preponderance of the purported signers were found not qualified to sign, that the circulators did not in good faith exert reasonable care to restrict signers to qualified persons, and should have recommended that the petition be held insufficient on that ground. In other words, protestant contends that all the pamphlets from the 14 counties named, involving 52,417 signers, should be excluded.

To do so would unjustly deprive approximately 19,726 apparently honest signers, who were in every way qualified to sign the petition, of their right to have their signatures counted merely because a greater number of apparently disqualified persons signed their names to the petition. State v. Olcott (Ore.) 125 P. 303.

There is no evidence of intentional fraud or guilty knowledge of any of the circulators in permitting persons to sign the petition who were not legally registered voters. In fact, in the only instance where the question of good faith of a circulator was mentioned, protestant expressly declared that the good faith, honesty, and integrity of the circulator was not challenged. It must be borne in mind that any person who circulates an initiative or referendum petition must rely on the statement of respective signers as to whether or not they are legally registered voters. The circulator may be deceived. In some instances the signer himself may, in good faith, believe that his name appears on the registration list when in fact it does not. It would not be just to deprive one person of the right to be counted upon a petition because others who were disqualified signed the petition.

In the absence of intentional fraud or guilty knowledge on the part of the circulator, the names of those not proved to be disqualified should be allowed to stand in all the petitions from the counties named.

The Referee made findings of fact concerning the claim of protestant as to alleged invalidity of signatures where the alleged invalidity was based upon grounds other than want of registration as voters.

As to the various classes of signatures involved, the findings of the Referee are:

"3. Your referee further finds that 2,750 persons who signed the petition under consideration neglected to give any post-office address.

"4. * * * That 361 signers of said petition giving Oklahoma City or Tulsa as their post-office address failed to give any street address in either of said cities.

"5. * * * That there were 46 signers of the petition who failed to give their initial or Christian name, but merely gave their surnames.

"6. * * * That in 1,483 instances it appears that one person has signed his name and the name of another, it usually being a case where a husband has signed for a wife or a wife for a hus-

band, and that 1,483 of such names were apparently not signed by the person who purported to sign the same.

"7. * * * On 67 of the pamphlets circulated three persons' names are apparently not signed by the persons who were given as signers.

"8. * * * That on 18 of the pamphlets apparently four names were signed by the same person and that 72 of the names so appearing thereon were apparently not signed by the person individually.

"9. * * * That there were 11 pamphlets whereon it appears that one person wrote his name and those of four others and that by reason thereof it appears that on said pamphlets 44 names were not written by the person purporting to sign the same.

"10. * * * On four pamphlets it appears that one person wrote the names of five other persons in addition to his own and that therefore on said pamphlets there are 30 names which apparently were not signed by the persons purporting to sign the same.

"11. * .* * That on two pamphlets apparently one person signed for himself and six other persons and that there were 12 names which were not signed by the persons purporting to sign the same.

"12. * * * That there was one pamphlet on which it appeared that one person has written in addition to his own name those of seven other persons.

"13. * * * That there were 262 instances where the signers purported to sign by mark and which signatures were not witnessed in the manner provided by statute.

"14. * * * Your Referee further finds in accordance with the request of the protestants and as set out in their schedule 10 that the circulators on 42 pamphlets failed to give their post-office address and that the circulators on 23 pamphlets who gave their post-office address as Oklahoma City or Tulsa failed to give their street address.

"15. * * * That on pamphlets C77-26 and C79-9-9-14 that the signers thereon apparently signed on the certificate page and were certified on the signature page and that by reason of this irregularity there are 120 names involved.

"16. Your Referee further finds as requested by protestants that on pamphlets C 99-1-2-3-4-5-6-7-45-48-49-50 that the circulators verified the same before a justice of the peace and that on pamphlets C99-8-10-11-12-13-14-15-16-17-18-19-20-21-22-23-24-25-26 - 27 that the verification was made by the circulator before the same justice of the peace, but that the acknowledgment purports to have been taken before the justice of peace by his clerk.

"17. Your Referee further finds in this connection that on pamphlet C101-23 that there appears one set of signers and an entirely different list of persons certified, that this involves 20 names and that on C 114-27-28 the pamphlets are duplicates and that 20 names should be removed from the list.

"18. Your Referee further finds the following miscellaneous irregularities, to wit:

"(a) Pamphlet C137-16 the circulator and notary failed to sign.

"(b) On pamphlet C 145-11 the notary failed to sign.

"19. Your Referee further finds that there were 62 pamphlets containing 1,240 names which were circulated by C. M. Millikan and which pamphlets were so mutilated as to render the same invalid and which was conceded by the proponents and by reason of this 1,240 names should be stricken."

These findings cover all cases upon which there was any evidence, and no exceptions are taken as to their correctness.

The concluding finding of fact is:

"20. * * * That the protestants have challenged 32,991 names as not registered voters and have challenged 26,122 names for all other reasons, making a total challenge of 59,113 names which, if granted in their entirety, would leave 113,519 names on said petition which have been in no manner controverted."

Protestant filed exceptions to the refusal of certain requested findings of fact.

Under all the requested findings of fact, protestant contends that all the names or signatures on all the pamphlets

where there is evidence tending to show one or more illegal signatures should be stricken.

In this connection protestant contends that there is unchallenged evidence that 7,840 names were illegally signed on said pamphlets, and that the Referee so found. He further asserts that such illegal signatures appear in substantial number on 3,611 pamphlets containing in all 69,339 purported signatures, and that striking the 69,339 purported signatures on said 3,611 pamphlets, together with 32,991 signatures of unregistered signers, the petition would then contain but 80,954 valid signatures, or 13,229 less than the required number.

He further asserts that the Referee deducted 7,840 names as being illegally signed to said petition, and when that number is added to the number challenged as unregistered voters, the total number to be stricken amounted to 59,113, still leaving 113,519 names. Reference to the findings of the Referee will show that protestant is in error in this assertion. The Referee did find in substance that some 7,840 signatures should be stricken as illegally or improperly signed, but in arriving at the 59,113, he included 26,122 signatures challenged by protestant for all reasons other than want of registration. Thereby protestant is given credit for all the 26,122 signatures which he specifically challenged as illegally signed, and all the 32,991 signatures of which he produced any evidence of lack of registration. This makes up the total of 59,113 names as stated in finding No. 20.

In order to invalidate the petition, 19,270 additional signatures must be stricken.

The contention of protestant, as stated above, is that all signatures on all the pamphlets containing names illegally attached to the petition, involving 69,339 signatures, should be stricken.

The contention is that because forged signatures and signatures invalid for other reasons appear on 3,611 pamphlets, it conclusively appears that the circulators of said 3,611 pamphlets must have known of such forgeries, etc., and for that reason their certificate or supporting affidavits are impeached and not entitled to credit and are of no force and effect, and that all signatures thereon should be stricken unless affirmatively shown to be genuine.

In this connection protestant cites: In re Initiative Petition No. 142, 176 Okla. 155, 55 P. 2d 455; In re State Question No. 138, 114 Okla. 285, 244 P. 801; State v. Graves, 90 Ohio St. 311, 107 N. E. 1018; Morford v. Pyle, 53 S. D. 356, 220 N. W. 909, and Barkley et al. v. Pool, 103 Neb. 629, 173 N. W. 600. None of the cases cited support the contention in whole.

All agree, in substance, that where the certificate or affidavit of a circulator is impeached for fraud, the probative value of such certificate or affidavit is destroyed and none of the signatures on such petition will be counted unless affirmatively proven genuine. That rule is generally applied to individual pamphlets.

But an examination of the cases cited and relied upon by protestant will reveal that the rule followed in these cases is substantially that it is not absolutely necessary to the validity of a petition or any part thereof that every signature thereon is genuine. But it is necessary to the validity of the petition or any part thereof that the circulator, when he makes the affidavit certifying the signatures on that part of the petition (the pamphlets forming a part of the petition) which he circulates and purports to verify, should believe that he is stating the truth. If it later appear that someone has imposed upon him and signed or forged the name of another, the circulator may still be said to have believed in the truth of the affidavit as made, and it will support every genuine signature upon it and only the ones not genuine will be stricken therefrom. But if the circulator knew that a signature appearing on such part of a petition was not genuine, that is, if he knew the signature was written by one other than

the purported signer, or was forged or was fictitious or that the signature was not written in his presence or if he knew the signer was not an elector, and notwithstanding such knowledge he willfully, corruptly, and intentionally makes a false and perjured affidavit to the contrary, then such affidavit is worthless and "availeth nothing" and none of the signatures on such petition or part thereof will be counted unless affirmatively proven genuine.

Under this rule, in the absence of evidence of intentional fraud or guilty knowledge on the part of the circulator, only those names proved or admitted to be forgeries or signed by other persons, or whose signatures, for reasons other than forgeries, etc., were invalid should be rejected.

Under the evidence and findings of the Referee not more than 26,122 names could be eliminated for all reasons other than not being registered as voters, if all names challenged by protestant on such grounds were stricken. Allowing all the names challenged as being not registered concerning which any evidence whatever was given, not more than 32,991 names could be eliminated. The findings of fact made by the Referee are approved and adopted in full. This leaves substantially 113,519 valid signatures, which is nearly 20,000 more than enough to sustain the petition.

The conclusions of law made by the Referee that the protest should be denied and the petition held to be sufficient and valid in all respects are approved and adopted.

The judgment of the court is that protestant has failed in his efforts to destroy the effectiveness of the petition and that the petition is sufficient and valid under the law.

BAYLESS, C. J., and CORN, GIBSON, H U R S T, and DAVISON, JJ., concur. WELCH, V. C. J., and OSBORN and DANNER, JJ., absent.