OKLAHOMANS FOR MODERN ALCOHOL-
IC BEVERAGE CONTROLS,
INC., Proponent,

v.

John B. SHELTON et al., Contestants.

No. 45410.

Supreme Court of Oklahoma.

Oct. 5, 1972.

Dissenting Opinion Oct. 11, 1972.

Miller, Wilson, Adams & Spencer, Melvin J. Spencer, George Miller, Oklahoma City, for contestants.

John B. Jarboe, Jarboe & Keefer, Tulsa, R. C. Jopling, Jr., Jopling, Blankenship, Herrold & Russell, Oklahoma City, for proponent.

BERRY, Chief Justice.

The principal question for our determination in this appeal, triable de novo, from the order of the Secretary of State denying sufficiency of the involved initiative petition, hereinafter described, is as to whether a sufficient number of registered legal voters in fact did sign the petition.

The Secretary denied sufficiency of the petition on the ground of its alleged unconstitutionality without referring to the number of valid signatures.

Pursuant to order, hearing was commenced April 5, 1972 to determine factual issues relating to Initiative Petition 288, State Question 480. Hearing was concluded August 22, 1972, and record of proceedings filed October 2, 1972. As the Secretary of State's final order made no determination of total number of signatures on the petition, the parties stipulated the petition bears 144,624 signatures.

Based upon evidence adduced, the Referee found stated facts established by fair preponderance of evidence, from which conclusions of law hereafter set forth were determined. The stipulated gross total of signatures affixed to the petition requires 104,818 valid signatures for submission of the proposition to the electorate. A total of 698,790 votes were cast for office of the Governor in the November 8, 1970 general election. Computed as fifteen percent of that total, 104,818 valid signatures are required to place this proposal before the electorate. Successful challenge to 39,807 signatures would render the petition invalid.

Exhibits introduced by the parties disclose 33,709 signatures of persons either not registered voters during circulation interval, or who registered during the interval but after signing the petition. The fact of non-registry rendered these signatures invalid. In re Initiative Petition No. 142, State Ques. No. 205, 176 Okl. 155, 55 P.2d 455.

The petition bears 135 admittedly illegible signatures, from which identity of the signers cannot be ascertained. Only a registered voter can sign an initiative petition. 34 O.S.1971 §§ 3, 6, 23. Initiative Petition 142, State Ques. 205, supra. Illegibility precludes determination of a signatory's eligibility as asserted by proponents and agreed by contestants.

On pamphlets circulated by persons not registered voters contestants challenge 2,355 signatures. Contestants urge the words "legal voter", appearing in 34 O.S. 1971 § 3 concerning signers, bear the same meaning as the words "qualified elector" in Section 3.1 relating to petition circulators. Proponents assert a circulator need not be a registered voter to be a qualified elector. In challenge of these related signatures proof was limited to the circulator's non-registration as a voter.

Constitution Article III, Section 1 declares qualifications of qualified electors. "Qualified electors of this state shall be citizens of the United States, citizens of

the state, including persons of Indian descent (native of the United States), who are over the age of eighteen years and who have resided in the state at least six months, in the county two months, and in the election precinct twenty days next preceding the election at which such elector offers to vote. * * *" Registration to vote is not a prescribed qualification. Prior to 1969 enactment of 34 O.S.1971 § 3.1, no statutory qualifications were prescribed for petition circulators. For this reason the court refused to invalidate signatures affixed to petition circulated by minors. In re State Question No. 138, 114 Okl. 285, 244 P. 801 (1926).

■ Legislative enactment of § 3.1 accomplished with knowledge of problems existing theretofore, attempted no differentiation or change in identity and qualification between electors and legal voters. Also see 34 O.S.1971 § 6 which relates to verification of signatures by the circulator. In this verification the circulator verifies that he is a "qualified elector", and that "each signer is a legal voter." This court cannot speculate as to legislative intent, or question propriety of particular enactments. Whether restrictions should be imposed, or qualifications of future petition circulators defined are matters purely of legislative concern. Had the Legislature intended petition circulators to be only registered voters this could have been accomplished by slight change in the language used. Since this was not done we are of the opinion the Legislature intended no such qualification. We hold that our statutes make no requirement that petition circulators be registered voters. There being no proof the circulators were not qualified electors, the signatures challenged on this ground are valid. Contestants challenge of 495 signatures under their Exhibit 140 and 140–A is not supported by any evidence to show the circulator involved was not a qualified elector.

■ Another category involves 2,199 signatures challenged as invalid either because subscribed out of the circulator's presence, or acknowledgement by circulator in making his affidavit was improperly performed. A total of 829 of these signatures are invalid for these reasons. Complete review of the evidence is unnecessary. On some challenges contestants insist a circulator, having made his affidavit, thereafter responded to contestant's questionnaire in such manner as to impeach the affidavit. These circulators testified signatures either were affixed in their presence or were able to identify particular signatures which were, or were not, affixed in their presence. Absent other proof, admission as to falsity destroys probative value of the affidavit and requires exclusion of the entire pamphlet. However, a circulator's testimony which redeems properly affixed signatures from challenge is sufficient to prove affirmatively those signatures properly were affixed within the rule in In re Initiative Petition No. 145, State Ques. No. 215, 187 Okl. 284, 102 P.2d 189; Milburn v. State Taxpayers Ass'n, 114 Okl. 285, 244 P. 801; In re Initiative Petition No. 142, State Question No. 205, supra.

■ Further challenges in this category were because a witness was unable to recall positively whether she appeared before the notary public taking the acknowledgement, months after the fact. The affidavit is not impeached by this testimony, since obviously given in consequence of the witness's meticulousness in testimony, rather than from real or well founded doubt.

■ Other challenges assert certain signatures were affixed at a place sufficiently far removed as to be out of the circulator's presence. One challenged pamphlet was circulated by a bartender, who observed subscription of signatures several feet across a room. Such challenges are hypertechnical and do not effectively challenge signatures other than those declared invalid.

■ Further challenge of 1,015 signatures is made by reason the name of the same signer appears on the petition more than once. No legal voter properly can affix his signature to a petition more than one time. When a signature is duplicated

the duplicated signature is to be disregarded. In re Referendum Petition No. 35, State Question No. 101, on House Bill No. 509, 78 Okl. 47, 186 P. 485. Disregarding each duplicated signature would impose a burden not contemplated by the law. One of each duplicated signatures not otherwise successfully challenged is valid. In this category 671 signatures are declared invalid.

One witness, testifying as a handwriting expert by stipulation, sought to prove that 951 signatures were affixed by someone who subscribed more than two names. The only proof adduced was the witness's opinion, and no effort was made to distinguish signatures, or establish lack of authenticity by presentation of an exemplar. Under this state of the evidence this expert testimony fails to support contestants' claim of total invalidity. Our decision in In re Referendum Petition No. 71, State Ques. No. 206, 179 Okl. 381, 65 P.2d 985, concerning similar testimony, states that upon such testimony alone the court cannot strike the names of petition signers, nor attribute corrupt motives to circulators so as to invalidate signatures they obtained. Related evidence is insufficient to overcome the presumption of validity as to all challenged signatures. We find invalid 460 signatures challenged on this ground. In re Initiative Petition No. 145, State Ques. No. 215, 187 Okl. 284, 102 P.2d 189.

Other signatures (167) are challenged because the persons signing, residents either of Oklahoma City or Tulsa, each failed to give a street address. These challenges are proper under the rule announced in In The Matter of Referendum Petition No. 119, State Ques. No. 381, Okl., 339 P.2d 530. However, of this total there are 34 challenged also as unregistered. Success of one challenge renders moot another challenge to that signature. Of the 167 signatures 133 are validly challenged. The remaining 34 challenges are ineffective, having been challenged on other grounds.

Further challenge is directed to 102 signatures which failed to give a post office address, and to 171 signatures where the signer gave "City" as a post office address, but with a street address patently in Oklahoma City. Challenges are proper as to 102 signers involved who omitted any post office address. Although the practice of giving "City" as an address is not strictly in accordance with statutes, supra, this is a generally understood usage and contestants were not disadvantaged by this abbreviation, and challenge on this ground is intrinsically technical.

In this same context 6,205 signatures are challenged because signers used "OC", "OKC", "MWC", "B'ville", and like abbreviations. Where generally understood such abbreviations are technical violations, unless a contesting party actually is prejudiced thereby. Contestants showed no resulting prejudicial burden and these challenges are not well taken.

Other challenges are asserted on various grounds by contestant's Exhibit 257. One pamphlet of 37 signatures is unverified by omission of signature by the person taking the circulator's acknowledgement. The signatures are invalid in view of 34 O.S.1971 § 6. On pamphlets containing 119 signatures the circulators attempted to take his own acknowledgement, and these are rendered invalid. In re Initiative Petition No. 224, State Question No. 314, 197 Okl. 432, 172 P.2d 324. Also challenged are 47 signatures on pamphlets whereon the circulator's verification was before a notary public whose commission had expired. We determine a total of 203 challenged signatures invalid. Remaining challenges by contestants under Exhibit 257 are deemed to be technical only, within the law announced in In re Initiative Petition 224, State Question No. 314, 197 Okl. 432, 172 P.2d 324, 327.

Challenges are made (Exh. 260) to pamphlets which bear defects relating to circulators, as 449 signatures where the circulator failed to give a sufficient post office address, the asserted defect

being a varying abbreviation of Oklahoma City. In each instance the post office address is readily determinable although abbreviated. We hold this to be substantial compliance with the statutes. Also challenged are 176 signatures on pamphlets whereon the circulator gave only Tulsa or Oklahoma City as an address. We hold this challenge specifically within our ruling in In re Initiative Petition No. 272, State Question No. 409, Okl., 388 P.2d 290, 294, and find these 176 signatures invalid. Challenge to six signatures is because the circulator signed the petition which he circulated and certified his own signature. No basis exists in the law for such challenge. Contestants also have challenged 1,963 signatures on pamphlets where the circulator's name in the affidavit varies from Affiant's subscribed signature. This is a technical objection, and the affidavit is deemed suficient under 34 O.S.1971 § 6.

■■■ Challenge of 231 signatures is on the ground some persons inscribed multiple names. On one pamphlet 16 signatures were subscribed in spaces provided for verification of signatures, the signers names then were printed on the signature side. No doubt is cast on genuineness of these signatures, the challenge being based entirely upon this reversed use of two sides of the petition. Other signature pamphlets (Ex. 267–272) are challenged by testimony of the expert witness that multiple signatures were subscribed by one person. This opinion evidence, considered in conjunction with physical examination of pamphlets containing challenged signatures, is insuficient to overcome the presumption of validity, and these signatures are valid.

■■■ One pamphlet containing 40 signatures was inadvertently verified by one Kunc, although in fact circulated by another. Signatures on this pamphlet therefore are invalid. Contestants challenge to other pamphlets circulated by Kunc is without basis. Inadvertent verification of one pamphlet does not destroy validity of others which are properly verified.

■■■ Contestants challenge 26 signatures on basis of the handwriting expert's

opinion testimony these signatures were subscribed by the circulator of petitions from which these pamphlets were detached. Challenged signatures are predominantly those of local residents, but no proof was offered relating to the least inquiry of the signers. These signatures are valid on basis of the legal presumption of validity which was not overcome by the quantum of proof adduced.

■■■ Another challenge concerns the name of Mrs. Ballyeat which appears on a pamphlet circulated by Sturm and on another circulated by Clark. Sturm testified Mrs. Ballyeat signed her petition, but Ballyeat testified she signed only the Clark petition. Mrs. Ballyeat properly could sign but once. The duplicate signature is not challenged elsewhere. This one signature is invalid. Absent showing of guilty knowledge or intentional wrongdoing, remaining signatures on the Sturm circulated pamphlet are not impeached.

■■■ Eighteen signers gave addresses outside Oklahoma. It may be assumed those persons are non-residents, and therefore ineligible to lawfully sign this initiative petition. 34 O.S.1971 § 2.

Petition counterparts bearing 315 purported signatures were circulated by one Kraker. These were challenged as invalid and invalidity was confessed by proponents. Four other pamphlets containing 133 purported signatures were challenged and the invalidity confessed by proponents. Under this finding a total of 448 signatures are invalid.

A total of 713 signatures are challenged on the ground some were improperly certified on the reverse sides of the signature pamphlet. Challenge often is based upon respective versions of the circulators as opposed to versions of contestant's staff members. Numerous challenges are based upon minor variations. Of the total challenged, there are 221 instances where the circulator's manner of certification is so improperly done as to require sustaining challenges to the related signatures. As to contestants remaining challenges under this category (Exh. 209–209–A), we conclude

these are not well taken, since there is substantial compliance with 34 O.S.1971 § 6.

The initiative petition bears a total of 107,478 valid signatures after deduction of 37,146 successfully challenged signatures. Contestants have challenged a total of 53,165 signatures. The facts found heretofore have adjudicated 51,765 challenges. Challenges to 1400 signatures have not been dealt with specifically. This seeming discrepancy results from tandem or duplicate challenges. Even assuming these challenges are not duplicate or tandem, and that all were sustained, validity of the petition still would be established.

 We decline consideration of the issue advanced by contestants relative to asserted constitutional invalidity of the current initiative petition. Threadgill et al. v. Cross, 26 Okl. 403, 109 P. 558 (1919).

From examination of the entire evidence we conclude the petitions are valid in the form required by statutes, and signed by a sufficient number of legal voters of this state, and the proposed amendment should be submitted to the people for determination.

DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, LAVENDER and SIMMS, JJ., concur.

HODGES, J., concurs in part, dissents in part.

BARNES, J., dissents.

HODGES, Justice (concurring in part and dissenting in part).

I concur in that part of the opinion that holds the initiative petition has a sufficient number of signatures.

I dissent to that part of the opinion where the court refuses to determine the constitutional question presented by the contestants.

The constitutional question was presented to the Secretary of State and he determined the initiative petition was not in proper form as required by the statutes, and an appeal was taken to this court. Briefs were submitted by both parties and this court heard oral arguments on the constitutional issue without any objection from the proponent.

By necessity included in any proposed amendment to a vote of the people involves the labor and efforts of many people, together with considerable expense to both the proponents and contestants and to the State of Oklahoma in conducting such an election. Where a proposed initiative petition is unconstitutional upon its face then I believe it is vastly important for this court to make such a determination before it is submitted to a vote of the people.

In my opinion the initiative petition is clearly unconstitutional upon its face by reason of Article XXIV, Section 1 of the Oklahoma Constitution which provides that not more than one subject may be presented in a proposed amendment to the Constitution. The proposed initiative petition contains three separate and distinct provisions, to wit (1) liquor by the drink (2) franchising, and (3) advertising.

A proposed constitutional amendment can only include those provisions which are supplemental and necessary to carry out a single scheme for the accomplishment of the basic purpose of the proposal. The basic purpose of the proposed petition is to obtain approval of "liquor by drink." Neither franchising nor advertising is necessary or supplemental to liquor by the drink, or have anything to do with the details in carrying it out or are otherwise so related as to constitute a single scheme.

Those who approve of "liquor by the drink", but object to the franchising and advertising portions of the petition are unable to express their constitutional right by the inclusion of the three provisions within one amendment. The provisions of franchising and advertising obscure and thwart the intent of the proposal to submit to a vote of the people the question of liquor by the drink.

The three provisions are clearly separate and distinct and cannot be included within one amendment. I therefore respectfully dissent.

BARNES, Justice (dissenting):

I cannot concur in the Majority Opinion for the reasons hereinafter set forth.

First, I disagree with its conclusion of law that petition circulators do not have to be registered voters. When the Oklahoma Legislature enacted Title 34, O.S.1971 and 1969 Supp., § 3.1, making it unlawful for any person other than a "qualified elector" to circulate any initiative or referendum petition, it must have contemplated that the circulator be a registered voter.

I recognize that in the 1926 case of In re State Question No. 138, 114 Okl. 285, 244 P. 801 (cited in the Majority), the Court, in the body of the opinion, noted that no authority had been cited, and it found none, to support protestants' contention that petitions containing 607 signatures should be eliminated because they were obtained by minors. There was a paragraph of the syllabus written under the sixth headnote prepared by the publisher of that opinion that referred to our Constitution and statutes as not defining the qualifications of a petition circulator. Though that syllabus seems to lack affirmative support in the opinion, I will concede arguendo that previous to the enactment of Section 3.1, supra, this State had no statute which referred to the qualifications of petition circulators in any way.

The Majority Opinion says that the Legislature enacted this statute "with knowledge of problems existing theretofore", and opines that since that Body therein attempted no change in circulators' qualifications from "qualified elector" to "registered voter", no such requirement or qualification was intended; and the opinion thereupon so holds.

If Section 3 of Title 34, requiring (also obliquely) that signers of such petitions be legal voters by specifying that the outer page of each petition pamphlet have a printed warning that it is a felony for anyone to sign such a petition "when he is not a legal voter", had been enacted by the same Session of the Legislature that enacted the 1969 Statute (Section 3.1, supra), then there might be more reason for thinking that the use of the two terms "legal voter" and "qualified elector" evidenced legislative intent to recognize a distinction in meaning between these two terms. But this was not the case. Section 3 (with a slight immaterial amendment in 1961) was enacted in 1910, or 59 years before Section 3.1, supra. During this 59-year period, many different sessions of the Legislature convened and adjourned with changing personnel. Also during this period, in 1936 this Court promulgated its opinion in In re Initiative Petition No. 142, State Question No. 205, 176 Okl. 155, 55 P.2d 455, in which this Court held that a petition signer had to be a registered voter, citing as its principal authority therefor (p. 460) the case of Ahrens v. Kerby, 44 Ariz. 337, 37 P.2d 375. In the Arizona case, that Court, in reaching its decision, concluded that the term "qualified elector", in the way it had been used in that State's Constitution and statutes, was intended to mean an elector who was a registered voter. And I submit that the question of whether a person *has the qualifications* of an "elector" is different from the question of whether he is (already or in praesenti) a "qualified elector". In view of the cited Oklahoma opinion following the Arizona decision, it would seem reasonable that after that decision had stood for 33 years, our Oklahoma Legislature, in enacting Section 3.1, supra, in 1969, would have seen no necessity for using any other term than "qualified elector" in making the circulation of an initiative petition, by anyone else, a felony. I daresay that many members of the various sessions of the Legislature, both lawyers and laymen, since 55 P.2d 455, supra, was published, have never considered the two terms "qualified elector" and "registered voter" as anything but synonymous. That the lawyers and/or laymen who drafted the "INSTRUCTIONS" sheet attached to the front of the petition pamphlets in this case so interpreted that term as it is used in Section 3, supra, is rendered doubtless by the replica of said sheet which follows:

## INSTRUCTIONS

## TO THE CIRCULATORS OF INITIATIVE PETITIONS

# WARNING

(a) It is unlawful for any person other than a qualified elector of the State of Oklahoma to circulate any Initiative or Referendum Petition. The circulator must be a registered voter within the State of Oklahoma.

(b) Only legally registered voters in the State of Oklahoma are eligible to sign this petition. They may sign only once but may sign it anywhere in the State, regardless of where they are registered.

(c) The petition must be signed in the circulator's presence with a pen or indelible pencil. The signer must sign exactly as he is registered and must list his name and address in his own handwriting. He may not sign for his spouse.

(d) A petition may contain from one to forty signatures.

(e) A circulator cannot sign his own petition.

(f) The circulator must print the name of each signer on the back of the petition in the space provided after each signer affixes his name to the petition, or before the petition is notarized.

(g) The circulator must sign the petition as a witness to the signatures carried therein **in the presence of a notary public** in the space provided on the last page.

SPECIAL NOTE: Each one who circulates the initiative petition should see that the above instructions are complied with; especially, that the names have been filled in properly on the back of the petition and the affidavit made by the one who circulated the petition.

*NOTICE TO CIRCULATOR: Return petitions AFTER notarization to Oklahomans for Modern Alcoholic Beverage Controls, Suite 322, Hotel Oklahoma, Oklahoma City, Oklahoma 73102.*
[A6614]

When it is remembered that petition circulators play a very important role in setting in motion the machinery of the law by which measures are brought before the public, I think it would be passing strange and just as incongruous for them not to be registered voters as the Arizona Court thought it was for petition signers not to be registered voters when, in Ahrens, supra, it said (37 P.2d p. 379):

" * * * it is reasonable to presume that it was foreign to the purpose of those who gave form to the constitution *to empower unregistered electors to set in motion* the machinery of the law by which *measures upon which they themselves could not vote might be brought before those who could.* They were evidently of the view that since, in the process of securing the judgment of the voters on a proposed or referred measure, *it is just as necessary that a petition to place it on the ballot be filed as it is that a vote on it* thereafter *be had, no one should be permitted to aid in accomplishing the former who had not placed himself in a position to take part in the latter,* the final solution of the problem." (Emphasis added)

There, that Court also proceeded to demonstrate quite clearly that the only practical way to substantiate voters' qualifications is by checking registration records. And the same truth applies to the qualifications of circulators as qualified electors. The only alternative to this is lengthening contests like the present one immeasurably by subpoenaing the circulators, putting them under oath, and taking their sworn statements.

In accord with the foregoing, it is my opinion that the term "qualified elector" as used in Section 3.1, supra, was intended to have the same meaning as "registered voter" and that the Contestants' challenge to 2,355 signatures on petition pamphlets circulated by persons not registered voters should have been sustained.

Nor do I think that a signer who also signs others' names, in the face of a warn-ing that he is thereby committing a felony, should have his own name counted. To do so makes the initiative process a farce. Title 34, O.S.1971 and 1961, § 23, provides, in part, as follows:

"* * * Any person signing any name other than his own to any petition, or knowingly signing his name more than once for the same measure at one election, or who is not at the time of signing the same a legal voter of this State * * * or who signs or files any certificate or petition knowing the same or any part thereof to be falsely made, * * * or who shall violate any provision of this statute, or who shall aid or abet any other person in doing any of said acts; and any person violating any provision of this Chapter, shall upon conviction thereof be punished by a fine of not exceeding five hundred dollars or by imprisonment in the penitentiary not exceeding two years, or by both such fine and imprisonment in the discretion of the court before which such conviction shall be had."

As directed by Section 3, supra, each of the petition pamphlets in this case had printed on its second page, immediately below the State Question number and the petition's number, the following, in bold blackfaced type:

" 'WARNING'

"It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter."

Should this Court adjudge this petition by lesser legal requirements than it recognized and proposed to be governed by? I do not think so. If the signatures of apparently intentional felons were eliminated from the petition in this case, there would be 344 less valid signatures on it than are upheld by the Majority Opinion.

Nor would I indulge "the presumption of validity" which the Majority Opinion ap-

plies to 491 of the 951 signatures affixed by persons who subscribed more than two names. I think the Contestants' expert testimony was sufficient to overcome such presumption and to place upon the Proponent the burden of establishing the authenticity of such signatures. As this burden was not discharged, I would not count any of the 951 signatures in this category. This would add 491 signatures to those found invalid by the Majority.

When this number is added to the 344 forgeries I have mentioned and to the 2,355 signatures obtained by unqualified circulators, it will be seen that, instead of having 107,478 valid signatures (other than those not dealt with in the Majority Opinion), the subject petition has 3,190 less, or only 104,288 valid signatures. This falls short of the 104,818 valid signatures required, and, in my opinion, renders the petition wholly ineffective.

In accord with the foregoing, I respectfully dissent to the Majority Opinion.