Justice DOWTY,
Dissenting in Part/Concurring in Part.
¶ 1. Led by Chief Justice Matlock, our Court has endeavored to give prompt and timely consideration to this important case. We have engaged in serious and stimulating debate on this matter and we have differing views on what the outcome should be, all in the best traditions of this Court. In this litigation, we are balancing the Constitutional right of the citizens to exercise the initiative against the stability provided by a bedrock document through which we are governed.
*58 ¶ 2. We have heard the testimony and received into evidence the Petitions from the Cherokee Nation Election Commission, We have also heard from the Protestants and the Proponents of the Petition and received their documentary evidence. It falls on us to conduct a de novo review and determine the sufficiency of the signatures on the Petitions. Since we have not adopted a specific procedure with regard to this review, we have differing opinions as well regarding the extent to which we should examine the Petitions. In my opinion, we should be thorough in our review, both as to signatures which may have been either excluded or included in error, as shown by the face of the documents, giving due consideration to the procedural law enacted by the Council in LA 15-04.
f 3. Having heard the testimony and evidence, having reviewed the Petitions and considered the debate and opinions of my colleagues, I have reached the conclusion that the process evidenced by these Petitions is so flawed that the sufficiency of signatures cannot be certified by this Court. Accordingly, I must respectfully dissent to the majority opinion.
¶ 4. I concur with Justice Leeds that the conduct of some of the circulators is such that their certification cannot be relied upon and I agree that there should be referrals for further investigation and prosecution. The circulators stand in a position of trust with regard to the integrity of the process and have a duty to those who lawfully sign the Petitions to assure that individual exercise of the power of initiative is not impaired. In this, some circulators have grievously failed and should be held accountable. I agree that where the certificate of a circulator is impeached for fraud, the presumption of genuineness is removed, and individual signatures on that page must be excluded unless independently supported as genuine. However, I do not go so far as to exelude all of the petitions of that circulator.
¶ 5. Likewise, the proponents have a duty to those who sign the Petitions to assure that the petition is in proper form; that the circulators are qualified; that the integrity of the pamphlets is maintained and that all necessary information is obtained from those who sign the petition.
¶ 6. The Council has enacted appropriate procedures to accomplish this purpose. The Statute is reasonable and not burdensome and is modeled after the corresponding Act of the State of Oklahoma.[1] We have reviewed many Petitions in proper form containing all of the information required. For instance, the Petitions circulated by proponent John Ketcher were excellent examples. Unfortunately, too many of the Petitions fall short of the requirements and many signatures must be discounted.
¶ 7. I agree with Justice Leeds that LA 15-04, § XV requires that both the address and registration number must be included with each signature.[2] The statutory language is clear, unambiguous and mandatory. Further, the mandatory language that must be included in the petition form under LA 15-04, Section IV, requires that each signer affirm that he has signed his name; is a legal voter; and, that his physical address, post office address and voter identification number are correctly written after his name. There is a discrepancy in the Act between these require- *59 merits and the counting provisions applicable to Election Commission review which appear to exclude a signature only if both the address and registry number are missing.[3] This is unfortunate and has resulted in many signatures being counted by the Election Commission that should be excluded.
II8. The inclusion of an address with each signature is mandatory and serves not only to assist the Election Commission in identifying the person and verifying voter registry, but also to allow a challenger of the petition to trace the signer for the purpose of determining his qualification to sign the petition.[4] Without this inclusion, the ability to effectively challenge the Petition in a timely manner, given the accelerated nature of the proceedings, would be impaired, if not impossible. Safeguards afforded challengers are as necessary to protect the integrity of the process as are those granted the proponent.[5] The inclusion of a current address (either physical address or post office box) and the registration number is required for each signature. My review discloses that the number included by the Election Commission failing to meet this mandatory requirement exceeds 365 signatures.
¶ 9. I also agree with Justice Leeds that the signatures which were allowed by the Commission on Petitions that Mr. Buzzard did not certify by his signature, must be excluded from the final count. This total was 55 signatures. Further, we must exclude those signatures which were impeached by the witnesses Summerfield and Wyatt on Protestants’ Exhibits 2 and 3. Adjusting these exclusions for signatures previously excluded under paragraph 8 above, the total excluded would be 28 signatures,
¶ 10. We have discussed allowing some signatures that were excluded by the Commission, including those contained on “short sheets”, those excluded for duplication and those excluded because the certification was not found on the back of the signature sheet. I would not allow the signatures where the certification was not on the back of the signature page. This requirement is not merely for convenience but is essential to assure the integrity of the pamphlets. The total excluded by the Commission for duplication was 36 and 1 would add back 18 because only one of the duplicate signatures should have been excluded.[6] Also, I have examined the number of signatures excluded solely for being *60 on short sheets. This total of .12 signatures I would add back into the count in this case. However, the sheet length is also important to the integrity of the pamphlets and proponents should comply with this requirement. Giving credit for these numbers, the Petition still fails, lacking 287 signatures.
¶ 11. Hundreds of signature pages properly completed shows that the process is not burdensome and can be easily done right. However, the actions of a few have placed the process in jeopardy. Bringing to a vote a change in the organic document governing a sovereign Nation should require effort and should be subject to safeguards that assure the election is the will of the people in the exercise of the initiative. The requirements of LA 15-04 are not difficult if undertaken and carried out by competent, honest and conscientious citizens, especially in the circulation of the petitions. The conduct shown by the evidence and cited by my colleagues shows how the conduct of a few can undermine the hard work and good faith of others. Accordingly, given the totality of error shown by the evidence, and giving due regard to the doctrine of substantial compliance, I must decline to vote to certify the Initiative Petition of the Proponents and would find that the proposition should not go before the Citizens of the Cherokee Nation at the Special Election now scheduled.
¶ 12. Our Council has set out criminal and civil penalties for those who violate the laws relating to the exercise of the initiative and referendum power.[7] It is mandatory that every Citizen who signs a petition be confronted with a cover page in 10-point bold type advising that it is a crime to sign any name other than his own, or knowingly to sign his name more than once or to sign when he is not a legal voter or to provide false information[8] The Election Commission is required to report violations of this warning to the Tribal Prosecutor.[9] In spite of these cautions, 539 Citizens who were not legal voters signed petitions according to the Election Commission records. Testimony discloses that circulators falsely, certified under oath that Citizens signed petitions in their presence. Citizens signed the names of other persons and signed there own name more than once. Such conduct is disappointing and evidences a disregard for the laws of this Nation. I do not want to chill the lawful exercise of this Constitutional right. A vast majority of the participants in this process were honest and conscientious. However, It is my hope that unlawful demonstrated conduct will be properly investigated and that appropriate sanctions will be imposed.
¶ 13. Finally, I concur with my colleagues in the finding that the Principal Chief has the authority to call a special election on an initiative petition.

. Tide 34 Oklahoma Statutes, Section 1, et seq.

. LA 15-04, Section Xv. "... The electors shall sign their legally registered name, their address or post office box, and Cherokee Nation Registry identification number....”

. LA 15-04, Section Xli. "The Election Commission shall make or cause to be made a physical count of the number of signatures on the petitions. In making such count, the Commission shall not include in such physical count: ... 2. All signatures of persons who do not list an address or Cherokee Nation Registry Number. ...”

. In Re Referendum Petition No. 35, 1920 OK 7, [10]. "The aim of the statute requiring correct addresses of the signers is to enable a protestant of the petition to trace the signer for the purpose of determining his qualification to sign the petition, and when this cannot be done, on account of the procedure adopted here, the statute is not Substantially complied with, and the presumption that the signatures were those of legally qualified electors is pri-ma facie destroyed.” See also In re Referendum Petition no. 18, State Question No. 437, 1966 OK 152, 417 P.2d 295(1966), -, r9.

. In re: Initiative Petition No. 379, State Question 726, 2006 OK 89, 155 P.3d 32 "... the right of the initiative is not absolute. It is subject to constitutional and statutory limitations. Each citizen has a right to protest the sufficiency and legality of an initiative petition and the safeguards afforded the individual challenging a measure are as necessary to the protection of the right as are those granted the proponent

. Oklahomans for Modern Alcoholic Beverage Controls, Inc., v. Shelton, 1972 OK 133, 501 P.2d 1089

. LA 15-04, Section 6

. LA 15-04, Section IX

.LA 15 04, Section VII