Del ARTERBURN et al., Plaintiffs
in Error,

v.

Tom SUMMERS, County Superintendent of
Schools, Tulsa County, Oklahoma,
Defendant in Error.

No. 39794.

Supreme Court of Oklahoma.

June 5, 1962.

Rehearing Denied June 22, 1962.

Doerner, Stuart, Moreland, Campbell &
Saunders, Tulsa, for plaintiffs in error.

David Hall, County Atty., Donald D.
Cameron, Asst. County Atty., Tulsa, for
defendant in error.

BERRY, Justice.

The plaintiffs in error will be referred to herein as "protestants" and the defendant in error as "respondent".

On June 6, 1961, a petition was presented to respondent in his capacity as County Superintendent of Schools of Tulsa County, Oklahoma. The petition purportedly bore the signatures of a majority of the electors of East Central Independent School District No. 12 of Tulsa County, hereafter referred to as "East Central", and, in effect, represented a request on the part of those signing the petition that respondent cause an election to be called in order to submit the proposition of whether East Central should be annexed to Tulsa Independent School District No. 1, hereafter referred to as "Independent School District".

After respondent had concluded, from an examination of the petition and an investigation relative to the number of qualified electors residing within East Central, that the petition bore the signatures of a majority of said electors, he caused an election to be called on the mentioned proposition. A protest was filed to his action in said particulars which was denied by respondent. At the election 1079 votes were cast for and 843 against the proposition. Respondent subsequently entered an order declaring that East Central should be annexed to Independent School District.

From respondent's action 25% of the electors eligible to vote at the election appealed to the district court. Following a trial de novo in said court, the actions of respondent were in effect sustained. Protestants subsequently perfected this appeal.

The actions and proceeding that are above mentioned, save an appeal to this Court, were had and conducted under 70 O.S.1961 § 7-1.

■ Protestants contend that competent evidence was introduced in the trial court showing that a majority of the electors of East Central did not sign the annexation petition; that the trial court erred in considering signatures on the petition where the affidavit relating thereto was false; that the judgment was based upon or followed an order of the trial court sustaining respondent's demurrer to evidence introduced by protestants and for said reason evidence that they introduced must be accepted as true; that such evidence shows that the annexation proceeding was void.

Protestants cite Carter Oil Co. v. Johnston, 208 Okl. 564, 257 P.2d 817, in support of their contention that we must accept evidence tending to sustain their position as true. They quote the first portion of the syllabus of that opinion to the effect that "This court in reviewing a ruling on a demurrer to evidence, must treat plaintiff's evidence as true;" Such is the rule in actions cognizable at law when tried to a jury. It is not the rule in a proceeding such as that before us. See Banning v. Peru-Laclede Syndicate, Inc. et al., 179 Okl. 382, 65 P.2d 976, 979, where it was stated that " 'When a trial is had before the court without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not do so at the earliest possible time, when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be impaired, if the court then determines what has been proven.' " We note that such is the rule in cases of equitable cognizance. Henderson v. Gifford, Okl., 318 P.2d 404.

■■ In the instant case it was incumbent upon the trial court to review the record and consider all relevant evidence bearing upon whether the annexation proceeding substantially conformed to applicable statutes and if the court so found, to, in effect, sustain the actions of respondent; otherwise, strike same down. See Huebert et al. v. Keen, District Judge, 190 Okl. 655, 127 P.2d 180. On appeal to this Court, the judgment of the trial court will not, as to questions of fact be reversed where sup-

ported by competent evidence. Banning v. Peru-Laclede Syndicate, Inc., supra.

For reasons stated, the basic issue presented by this appeal is whether the judgment of the trial court is sustained by competent evidence. A careful examination of the record has led us to conclude that it is.

Protestants called respondent as a witness. His testimony shows that following receipt of the annexation petition he examined same and computed the number of signatures thereon to be 1307; that he then undertook to determine the number of electors residing in East Central; that in doing so he reviewed the 1961 school enumeration report for East Central which listed 1071 families with children under the age of 18 years; that he assumed that the average number of electors to each family was two; that from the records of the County Assessor he learned that there were 1326 residential properties in East Central on the ad valorem tax rolls; that he determined, after visiting the district, that 1250 of the properties were occupied; that he assumed that the average number of electors residing in each property was two; that he determined that there were from 80 to 100 electors residing in trailers; that he concluded that the aggregate number of adults residing within the area did not exceed 2600 and that 100 of them were probably not qualified electors; that he thusly determined the number of qualified electors to be approximately 2500.

As refuting the foregoing testimony, protestants point to testimony of witness tending to show that by actual count of occupied and unoccupied properties the number of occupied properties exceeded that given by respondent; that by using the last Federal Decennial Census as a basis, the adult population of East Central as of date that the amended petition was circulated was in excess of 3500. Protestants showed further that there were 1363 gas meters in the area, a portion of which was used by business establishments, and that the population of the area increased from month to month. It is not disputed but that this evidence tended to show that the qualified electors residing in the district exceeded 2614 at the time the annexation petition was submitted to respondent. This evidence, however, is not conclusive and, like that of the respondent, is based upon assumption. We so say for the reason the mentioned census included persons who were not qualified electors and also persons who resided without the district and the information gathered therefrom was for said reason largely corroborative of estimates made by witnesses who gave testimony tending to sustain protestants' contentions. It follows that it was the trial court's privilege to accept respondent's testimony as showing the approximate number of the qualified electors in the district and not the testimony of witnesses upon which protestants rely. We add, that neither party contends that it was possible to establish with mathematical accuracy the exact number of qualified electors within East Central at a given time.

The trial court found that the signatures of certain persons should not be considered in determining the number of qualified electors who signed the annexation petition. Protestants do not contend that such finding tended to show that a majority of the qualified electors did not sign the annexation petition if the number of electors within the district was that determined by respondent and the trial court.

■ It was stipulated that if an expert witness were present he would testify that in 339 instances a signator also subscribed the name of his spouse; that if the non-signing spouses were present each would testify that he or she adopted and ratified the signature affixed by the other. As we read respondent's brief, he does not contend that the petition bore the requisite number of signatures if the questioned signatures are excluded.

In Huebert v. Keen, supra, it was contended that the signature of a person whose name was signed to an annexation petition by his spouse should be excluded in determining the number of qualified electors who purportedly signed the petition. The non-

signing spouse testified that he requested his wife to sign his name to the petition and for that reason it was found that the signature should not be excluded.

Protestants argue that the cited opinion is not in point; that here the spouse who signed was not authorized to sign the name of his or her spouse at the time he or she did so; that the law pertaining to the adoption of signatures does not apply. In Rural Special School Dist. Nos. 24 and 63 v. Hatfield Special School Dist. No. 22, 185 Ark. 429, 47 S.W.2d 790, a like contention was made. In rejecting the contention, this was said:

"* * * These names were signed either by the husband for the wife or by the wife for the husband, and in one instance by a mother for her daughter, who was away at the time, and the undisputed testimony shows that some of these parties had informed their husbands or wives that they were in favor of the petition and asked that their names be signed by them accordingly in case they were not present when said petition was submitted; and all testified that they had been immediately informed that their names had been signed to the petition, and that they ratified such action and made no effort to withdraw their names and were in favor of the consolidation of the districts. The court, therefore, did not err in holding that these were valid signatures and could not be withdrawn even by the persons whose names had been signed as a matter of right without a proper showing first made."

As pointed out in Dunlap et al. v. Williamson, Attorney General et al., Okl., 369 P.2d 631 and cited cases, irregularities which do not tend to affect results of an election will not, as a general rule, be permitted to defeat the will of the majority. While the cited case is not in point of fact, we are of the opinion that when considered with the law announced in Huebert v. Keen and Rural Special School Dist. Nos. 24 and 63 v. Hatfield Special School Dist. No. 22, supra, no grounds exist for holding that the signing by one spouse of the name of the other to the petition where the non-signing spouse ratified his or her signature, shows that there was a failure to comply substantially with applicable statutes.

Protestants also contend that the fact that the petition bore the signatures of the non-signing spouses served to render false affidavits relating to said signatures, which affidavits were to the general effect that each person purporting to sign signed the same "in his own hand and in" the presence of the affiant; that for said reason none of the signatures to which such affidavits related should be counted or considered. In re Initiative Petition No. 145, State Question No. 215, 187 Okl. 284, 102 P.2d 189, is cited as sustaining this contention.

Protestants do not point to a statute requiring that annexation petition be, in effect, verified by affidavit of the person who circulates the petition. We are, for said reason, of the opinion that protestants' last mentioned contention is not well taken. For authority tending to sustain our conclusion in this respect, see Carter v. Green et al., 97 Cal.App. 564, 276 P. 120.

For reasons stated the judgment of the trial court is affirmed.

The complained-of order of respondent was stayed as was the judgment of the trial court herein. It appears that for said reason East Central and Independent School District continued to operate as separate districts. In order to avoid possible complications, it is ordered that respondent's order of consolidation become operative only upon and after the mandate that will issue herein reaches the clerk of the trial court.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, HALLEY, JOHNSON and IRWIN, JJ., concur.