## In re INITIATIVE PETITION No. 196, STATE QUESTION No. 273.

No. 29564.   April 16, 1940.

Rehearing Denied May 7, 1940.

*102 P. 2d 153.*

B. M. Parmenter, of Oklahoma City, Neal E. McNeill, of Tulsa, and Tench Tilghman, of Oklahoma City, for proponents.

McPherren & Maurer, of Oklahoma City, for protestants.

RILEY, J. This is an appeal from a finding and holding of the Secretary of State that Initiative Petition No. 196, involving State Question No. 273, a proposed constitutional amendment to be known as the Oklahoma Welfare Amendment of 1938, involving a transaction tax, failed to have a sufficient number of qualified signers.

The matter comes before this court for hearing de novo. Such hearing was referred to Honorable P. W. Holtzendorff, one of the Referees of this court, with directions to hear the evidence and return to the court his findings of fact and conclusions of law, together with a transcript of the proceedings.

Hearing was had by the Referee beginning January 22, 1940. The report of the Referee with the transcript of the proceedings containing 1,276 pages of typewritten matter, not including exhibits, was filed March 2d.

There are no exceptions to the report of the Referee by proponents, and the unchallenged findings of the Referee disclose that a copy of Initiative Petition No. 196 and notice of intention to circulate the same were filed with the Secretary of State on October 17, 1938.

On January 14, 1939, the proponents filed with the Secretary of State 5,021 pamphlets containing the petition, purporting to have 102,159 signers. But by actual count the total number of signatures was 99,267.

The principal ground relied upon by protestant is that the petition does not bear a sufficient number of valid signatures.

The parties stipulate that the highest number of ballots cast at the November, 1936, election in Oklahoma, was 749,740, and that the highest number of ballots cast in the November, 1938, election was 507,956.

The petition proposes an amendment to the state Constitution, and the minimum number of signers necessary to submit the question to the people for adoption or rejection is 15 per cent. of the highest number of votes cast at the next preceding general election. If the number required is to be measured by the vote cast at the 1936 election, 112,461 valid signatures are required. If measured by the 1938 election, the required number is 76,193.

The Referee finds that protestant successfully challenged 22,050 signers upon the ground that that number of signers were not registered voters; that of 26 pamphlets, containing in all 517 signatures, the notary public failed to attach his seal to the supporting affidavit; that on 17 pamphlets, containing 327 names, the circulator failed to sign; that 579 signers failed to sign their Christian names or the initial or initials thereof; that in 1,100 instances one person signed his name and that of another, usually

being cases where the wife had signed her name and that of her husband, or the husband had signed his name and that of his wife; that on 63 pamphlets it appeared that one person had signed his name and that of two other persons; that 74 persons had signed by mark without witnesses to their signatures; that on two pamphlets, containing 40 signatures, the circulator had signed by mark without witness to the mark; that all the signatures on two pamphlets, containing 40 names, were forgeries.

The Referee concludes as a matter of law that because of the irregularities other than failure of registration, pointed out in his findings of fact noted above, 3,823 names or signatures would be stricken in addition to the 22,050 names or signatures of persons found not to be registered voters, making in all 25,873 names or signatures which should be stricken. That this would leave but 73,-394 valid signatures to the petition, or 3,394 less than the minimum number required by law applying the general election of November, 1938, as the proper measure of determining the required number of signatures.

Since the proponents do not except to to the findings of fact and conclusions of law, we would be justified in accepting the findings of fact as true without further examination of the record, but examination of the record discloses that such findings are supported by the evidence.

The first conclusion of law made by the Referee is:

"Your Referee concludes that since the petition in question was filed in the office of the Secretary of State on October 17, 1938, that the required number of signers was 112,661, and that since the petition does not purport to have that number of signers, either good or bad, that the same should be held insufficient as a matter of law and the protest thereto sustained."

The thirteenth conclusion is:

"Your Referee concludes that by reason of all of the aforesaid findings of fact and conclusions of law that 25,873 names should be stricken from the pamphlets in question as those of unauthorized and improper signers and that only 73,394 names should be considered as valid and proper signatures on said petition."

Since we have found that all of the findings of fact made by the Referee are supported by the evidence, it becomes and is unnecessary to consider whether the first conclusion of law is correct. We reserve that question for future consideration when and if it shall become necessary. But, as stated, in the fourteenth conclusion of law by the Referee, whether the minimum number of signers requisite in order to sustain the petition be measured by the number of votes cast at the November, 1936, election, or that of 1938, the petition should be, and is, held insufficient as not having the requisite number of valid signatures.

The protestant has excepted to the failure of the Referee to find as a fact and conclude as a matter of law that a large number of the pamphlets and all the signatures thereto should be stricken because the circulators thereof permitted persons to sign the names of others than themselves to the petition, and that because it appears that this was done, the circulator should be presumed to have known about it, and thereby his certificate or supporting affidavit is impeached. But the Referee has found that there is no evidence of willful or corrupt conduct on the part of the circulators and recommends that only the names written or signed by persons other than the purported signers should be stricken.

We approve the recommendation of the Referee in that regard under the authority of State ex rel. McNary v. Olcott, Secy. of State (Ore.) 125 P. 303, and State ex rel. Gongwer v. Graves (Ohio) 107 N. E. 1018.

Other exceptions are made by protestant, but we deem it unnecessary here to consider same, for the reason that if the exception be sustained, it would but add to the number of disqualified signers already found and held to be sufficient in number to strike the petition down.

The judgment is that Initiative Petition No. 196, involving State Question No. 273, is wholly insufficient because

it fails to have attached the requisite number of valid signers or petitioners, and that the protest thereto be, and is, sustained.

BAYLESS, C. J., and GIBSON, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and OSBORN, CORN, and DANNER, JJ., absent.