In re INITIATIVE PETITION NO. 176, STATE QUESTION NO. 253.

No. 28795. April 30, 1940.

Rehearing Denied May 21, 1940.

*102 P. 2d 609.*

McPherren & Maurer, of Oklahoma City, for protestant.

Joe Mattox, of Oklahoma City, for proponents.

RILEY, J. This is an appeal from a decision of the Secretary of State holding Initiative Petition No. 176, involving State Question No. 253, sufficient in form and having the requisite number of signatures of legally qualified voters.

The petition was protested by J. M. Ashton, and he appeals from the decision of the Secretary of State, and the matter is here for hearing de novo and decision.

The petition calls for the submission of a proposed act or law to the voters of the state for adoption or rejection as provided by section 3, art. 5, of the Constitution. The proposed law provides for allocation, apportionment, distribution in certain percentages, and use of money collected by the state for motor vehicle mileage tax, license and registration, and taxes on sale and consumption of gasoline, to the various counties of the state, cities and towns, and the State Highway Commission.

The matter was referred to one of the Referees of this court with directions to hear the evidence, make findings of fact and conclusions of law, and return same to the court together with a transcript of the evidence and proceedings had before him.

The hearing before the Referee was commenced on February 21, 1940, and completed on March 6, 1940, and the Referee filed his findings of fact and conclusions of law on March 16, 1940.

The unchallenged finding is that the petition here involved requires 59,979 valid signatures, and that the petition as filed purports to contain 97,948 signatures, or 37,969 more than the requisite number if all the signatures are valid.

It appears from the finding of the Referee that signatures were challenged by protestant on 13 different grounds. He finds that under the evidence 6,424 names should be stricken as not being legally registered voters; that 189 names should be stricken as duplications, 400 on account of signing on the page provided for certificate instead of the page containing the petition, 121 for failure to give post-office address; 14 for failure to sign initial or Christian name; 207 for failure to give street addresses in Oklahoma City; 14 for failure to give street addresses in Tulsa; 12 for attempt to sign by mark without witness thereto; 20 for failure

of circulator to sign and verify certificate; 60 because three pamphlets providing for 20 signatures each were blank and unsigned by anyone, three because they had signed more than one pamphlet, 21 because their names were erroneously certified as having signed, and 243 because their names had been signed by other persons.

The Referee concludes that not to exceed 7,539 names should be stricken, thus leaving the petition with 90,409 valid signatures, or 30,530 more than the requisite number, and that the petition is and should be held to be sufficient and valid in all respects and the protest should be denied.

The findings and conclusions of the Referee are not challenged by either party, except the conclusion that the petition contained sufficient signatures and is valid.

We accept the unchallenged conclusions and findings to this extent as true and approve same.

Protestants requested additional findings of fact and conclusions of law on questions not involved in any of the signatures which the Referee found and concluded should be stricken.

The record discloses that pamphlets comprising a part of the petition were circulated in many counties of the state, and after signatures thereto were obtained the pamphlets were forwarded to the office of Mike Donnelly, county commissioner of Oklahoma county. He was secretary-treasurer of the state organization of county commissioners and supervised the circulation of Initiative Petition No. 176.

Each pamphlet contains a copy of the petition, including a copy of the proposed law, and immediately following the copy of the law is a page containing 20 lines, numbered from 1 to 20, for the signatures of petitioners, followed by space for writing place of residence and post-office address on each line substantially as provided by section 5868, O. S. 1931, title 34, Okla. St. Ann. § 2.

On many of the pamphlets where, after the signature of the person who signed on line No. 1, and the residence of the signer was written out, followed by the name of the city or town, written out in full, and the state was indicated by the abbreviation "Okla.", the address, post office and state of subsequent signers on the same page, where the signer was from the same city or town, would be indicated by a "ditto" mark under the name of the city or town in the line above.

After the pamphlets in this condition were delivered to Mr. Donnelly, he, or one of his clerks or secretaries working in his office, under his direction, wrote in the name of the city or town, and state, over the "ditto" marks, before filing the petition with the Secretary of State.

Protestant requested findings as to the number of such pamphlets, the total number of signatures where this had been done, and the total number of all the signers on pamphlets where this was done, and requested conclusions of law to the effect (1) that all the names or signatures where the post-office address or state had been so written in, should be stricken, and (2) that all the names on all the pamphlets where this had been done as to part of the names should be stricken.

The contention of protestant in this regard is that where the addresses of the signers do not appear on the pamphlets when verified by the circulator, and is supplied or written in by some person, after the pamphlet has left the possession of the circulator, this is not a substantial compliance with the provision of section 5868, O. S. 1931, title 34, Okla. St. Ann. § 2, in that the form therein prescribed contemplates that each signer must himself state that "my residence and post-office address are correctly written after my name," and that this is not a substantial compliance with section 5872, O. S. 1931, title 34, Okla. St. Ann. § 6, which requires the circulator to verify each sheet by

his affidavit by the statement, "I believe that each has stated his name, post-office address and residence correctly. * * *"

In his brief protestant takes the position that all the purported signatures on all pamphlets subject to such situation are stripped of the presumption that same are the signatures of persons legally qualified to sign said petition, and should not be counted in determining the question of the sufficiency of the petition in the absence of affirmative proof that the persons purporting to have signed the petition were qualified to sign same.

As to the names of those signers whose residence and post-office addresses were entirely supplied or written in after the petitions were verified by the circulator, there would be merit in this contention. The Referee has found and concluded that all signatures where no address was given should be stricken. But as to the other signatures on such pamphlet, in the absence of evidence of willful fraud or guilty knowledge on the part of the circulator, they should be counted. We have recently held in In re Initiative Petition No. 145, State Question No. 215, 187 Okla. 284, 102 P. 2d 189, and In re Initiative Petition No. 196, State Question No. 273, 187 Okla. 120, 102 P. 2d 153, that in the absence of evidence of willful fraud or guilty knowledge on the part of a circulator of an initiative petition of the fact that one person has signed the name of another or others, only the names shown to have been so signed will be stricken. So in the instant case, in the absence of evidence of willful fraud or guilty knowledge on the part of the circulator, the fact that some person, not authorized so to do, has written in the residence or post office of a purported signer whose residence or post-office address was not on the petition at the time it left the possession of the circulator, should not deprive a legal signer of such pamphlet of the right to have his signature counted in arriving at the requisite number of signers.

The finding of the Referee is that there is no evidence of fraud, either in the circulation, signing, or handling of the pamphlets in connection with the petition. No evidence of willful fraud is pointed out in the briefs.

As to whether the signatures of persons, whose residence, post office and the state, had been written in over "ditto" marks indicating that the post office or state was the same as the signer on the line above, should be stricken, we think the objection is technical only and without substantial merit.

It is true that the form of petition provided by statute contemplates that the signer state that his residence and post office are correctly written after his name. But the law does not require that the signer himself write his residence and post office after his name. The only reason for requiring the residence and post office to be given is to enable any interested person to locate the signer and thereby be enabled to investigate the validity of his signature, etc. If the residence or post-office address is plainly indicated in such a way as to enable a person interested in or opposed to the petition to locate the party or identify the address, it is a substantial compliance with the law. "Ditto" marks are generally understood to mean "the same as above" or a representation of what appears written above. 18 C. J. 1404.

The Referee finds that there is no evidence that in any instance a wrong or erroneous address was written in by any person. We find no such evidence, and protestant does not claim that such was done. The addresses indicated by the marks were sufficient. Nothing was taken therefrom or added thereto by writing the correct words over the "ditto" marks.

The evidence is, and it is not contradicted, that in no case was there a residence or post-office address written in where there was no "ditto" marks indicating the name of the city or town.

In some instances the name of the State of Oklahoma was apparently indi-

cated only by the letters "Ok," and someone, after the pamphlets were sent to Oklahoma City, finished out the abbreviation "Okla" by adding the letters "la."

Technical defects such as that should be disregarded.

The procedure prescribed by statute is not mandatory, but if substantially followed is sufficient. If the end aimed at can be attained the procedure followed will be sustained. Clerical and mere technical errors are to be disregarded. Section 5892, O. S. 1931, title 34, Okla. St. Ann. § 24; In re Initiative Petition No. 142, State Question No. 205, 176 Okla. 155, 55 P. 2d 455.

We find no substantial error in the findings of fact or conclusions of law of the Referee. The conclusions of law requested by protestant were properly rejected.

The judgment of this court is that protestant has failed in his efforts to show the petition insufficient; that the petition contains more than the requisite number of valid signatures, and that said petition is sufficient and valid in all respects, and that the protest is denied.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.