In re INITIATIVE PETITION NO. 249.
In re STATE QUESTION NO. 349.

No. 34611.   Oct. 9, 1950.

Rehearing Denied Oct. 13, 1950.

*222 P. 2d 1032.*

Harry T. Hudson, Jr., of Oklahoma City, for protestant.

A. J. Moore and David C. Shapard, both of Oklahoma City, for proponent.

Paul & McPheron, of Durant, amicus curiae.

LUTTRELL, J. This is an appeal from the action of the Secretary of State in holding valid Initiative Petition No. 249, State Question No. 349, proposing amendments to existing laws

with reference to the amount of sales tax to be levied upon sales within this state, and apportioning the revenues derived from the increased sales tax therein provided for. To this petition protestant J. M. Ashton filed his written protest, which was by the Secretary of State overruled and denied, the Secretary holding that the initiative petition was valid. Protestant appealed to this court. Hearings upon the protest were had before a referee appointed by this court, and at the conclusion of all the evidence the referee made findings of fact, and filed his report upholding the validity of the initiative petition. Protestant filed exceptions to the findings and report of the referee. The exceptions urged have been briefed and argued orally, and submitted to the court for final determination.

The hearing in this court is a trial de novo, in which the burden rests upon the protestant to establish his various contentions. In re Initiative Petition No. 142, State Question No. 205, 183 Okla. 343, 82 P. 2d 803.

By 34 O. S. 1941 §8, an appeal to this court is provided for from the action of the Secretary of State and it is therein provided that upon such appeal "such court shall give such cause precedence over all others."

Protestant's first contention is that his challenge to the jurisdiction of the Secretary of State to pass upon the sufficiency of the petition should have been sustained. This contention is based upon the fact that while 34 O. S. 1941 §8, provides that the Secretary of State shall pass upon the sufficiency of the petition and upon protests filed to its sufficiency, 34 O. S. 1941 §26 provides as follows:

"All duties of any nature whatsoever, which by this chapter were originally imposed upon the Secretary of State, shall be hereafter performed by the State Election Board if such board is continued in existence. Should such board be discontinued, the duties herein imposed upon the same shall be performed by the Secretary of State."

Examination of the statutes discloses that section 26 was passed by the Legislature in 1910, being approved March 17, 1910, and with certain changes in verbiage appears in the Revised Laws of 1910 as section 3401. Section 8 above referred to (S. L. 1911, p. 236), was enacted as an amendment to section 2, art. 1, ch. 66 of the Session Laws of 1910, and was approved March 18, 1911. Apparently it is also contained in the Revised Laws of 1910 as section 3375. However, it is to be noted that the Act adopting the Revised Laws of 1910, S. L. 1911, ch. 39, expressly provides that it shall not be construed to repeal any Act of the Legislature enacted subsequent to the adjournment of the Extraordinary Session of the Legislature which convened in January, 1910. Therefore the inclusion of the 1911 law in the Revised Laws of 1910, although followed by the inconsistent provisions of section 3401, did not operate to nullify or repeal it. The two sections are inconsistent, being in irreconcilable conflict. In such case the 1911 law, section 8, supra, being the last statute enacted in point of time, will prevail.

The general rule is that where two inconsistent statutes are carried into the codified law the one last passed, which is the later declaration of the legislative will, should prevail, regardless of the order in which they are placed in the compilation. 50 Am. Jur., p. 471, §457. Ramsey v. Leeper, 168 Okla. 43, 31 P. 2d 852; Stephenson v. O'Keefe, 195 Okla. 28, 154 P. 2d 757.

Although the question of the conflict between the two sections does not appear to have been heretofore raised, the court has in numerous decisions upheld the authority of the Secretary of State to pass upon the sufficiency of such petitions. See In re Initiative Petition No. 158, State Question 229, 188 Okla. 111, 106 P. 2d 786; In re Initiative Petition No. 242, State Question No. 336, 201 Okla. 423, 206 P. 2d 1000; Associated Industries of Oklahoma v. Oklahoma Tax Commission, 176 Okla. 120, 55 P. 2d 79. In view

of the above this contention is untenable.

Protestant next contends that the initiative petition is defective in form in that, while it proposes to amend certain sections of the statute, it omits a portion of one section proposed to be amended, placing a sales tax upon dues or fees for the privilege of having access to or the use of amusement, entertainment, athletic or recreational facilities, and that the certificate, instead of reciting that the following "proposed law" shall be submitted to the legal voters of the state, provides that the following "proposed amendments to existing law" shall be submitted to the legal voters of the state. This contention is likewise untenable. Unquestionably, an existing statute may be amended by the passage of another statute omitting a portion thereof, just as it may be amended by changing a portion, or by adding to the provisions thereto. The certificate, although not using the exact terms set forth in 34 O. S. 1941 §2, in our judgment, sufficiently advises the voters of the nature of the proposed change in the existing laws. We have heretofore held that substantial compliance with the provisions of the statutes with reference to initiative petitions is sufficient, and that mere technical errors will be disregarded. In re Initiative Petition No. 176, State Question No. 253, 187 Okla. 331, 102 P. 2d 609; In re Initiative Petition No. 224, State Question No. 314, 197 Okla. 432, 172 P. 2d 324. We hold that the petition in the instant case is sufficient in form.

Protestant's last contention is that the Referee erred in holding insufficient the evidence adduced by protestant tending to show that persons signing the initiative petition in various counties in the state, including Oklahoma county, were not registered voters. In this connection the oral testimony of the county clerk of Oklahoma county, and of several of the former secretaries of the county election board, and the present secretary of the county election board, was heard by the Referee. It is conceded by protestant that there were 94,701 names signed to the initiative petition, and that in order to render it invalid it was necessary to show that at least 36,974 of those names should be stricken therefrom. Protestant challenged for various reasons the names of some 34,000 signers, and also challenged in addition thereto the names of 17,910 signers in Oklahoma county on the ground that said signers were not registered voters. The Referee held the evidence insufficient to establish that these challenged persons were not registered voters. If the referee is correct as to his conclusion with reference to the challenged Oklahoma county voters, the petition would be sufficient if protestant's challenges to all the remaining signers was sustained. Therefore, we need consider only the question of whether the evidence was sufficient to show that the 17,910 voters challenged in Oklahoma county were not registered voters.

From an examination of the record it appears that a master list purporting to contain the names and addresses of all the registered voters of Oklahoma county from the date of the general registration law in 1916 up to and including June 6, 1948, was filed in the office of the county clerk and that thereafter supplemental lists of voters were filed bringing the master list up to May, 1950, and that these records were the only ones examined by protestant.

26 O. S. 1941 §77 provides the method of preparation of a county registration book. It is there provided that the precinct registrar shall issue to each qualified voter a registration certificate, making at the time a duplicate thereof. From such duplicate he is required to prepare a precinct register (the black book referred to in the testimony). Within ten days after any registration the precinct registrar is required to deliver to the secretary of the county

election board the duplicate registration certificates which have been issued by him in his precinct. The secretary of the county election board is required to make up a county registration book from such duplicate registration certificates within 20 days after receipt thereof by him, and file the same when completed in the office of the county clerk where the same is made a public record. The master list upon which protestants rely was not made up from the record in the county clerk's office, but was made up in large part from the precinct registers and information obtained therefrom. The evidence on this point is conclusive.

From the evidence it conclusively appears that this master list and these supplements were not prepared from duplicate registration slips in accordance with the provisions of 26 O.S. 1941 §77, nor from any records which had theretofore been prepared in that manner. This appears from the testimony of Mr. Fowler, who was clerk of the county election board of Oklahoma county at the time the master list was prepared. He testified that the master list was prepared from books which he called the red book and the black book, both registration books, the black books being the registers of the various precinct registrars, and the red book a take-off of, or copied from, the precinct registers; that the red book was sent out to the precincts at the time of the election to be brought up to date, and that it was loaned to the county election board. He further testified that the black books were brought in to the office of the county election board when they had been used to such an extent that they could no longer carry sufficient names, and that when this was done they were given a new book in which were listed the current registered voters who were eligible to vote in the next election.

Protestant asserts that the certificate of the secretary of the county election board that the master list was a true and correct list of all voters entitled to vote from Oklahoma county is at least prima facie evidence of the correctness of that list, and that it may not be attacked in this manner. But each certificate introduced in evidence by protestant recites that it is a full, true, and correct record, according to the best of the knowledge, information, and belief of the secretary of the county election board, and we think in such case its effect as prima facie evidence may be overcome by showing that it was not prepared as required by law, and that when the evidence so showed the presumption that the signers of the initiative petition were qualified voters would obtain. In re Initiative Petition No. 224, State Question No. 314, supra.

In Re Referendum Petition No. 71, State Question 216, 179 Okla. 381, 65 P. 2d 985, we said that the Referee was in error in refusing to admit in evidence lists of registered voters required by law, when and where the same were accurately kept, but we further said:

" . . . but we are not prepared to say whether such 'yardsticks' are accurately kept in all counties of the state, without a particular examination and upon presentation in evidence.

"The presumption is that officers perform their public duty and that such books and lists are kept accurately, but also the presumption is, when a signature appears, that no citizen signing violates the law. The consequence is that a signature upon an initiative or referendum petition is presumed to be genuine. The underlying reason for this rule and conclusion, under it is that, in the clash of presumptions, the court may well be guided by a particular examination."

Protestant in his brief urges that 26 O.S. 1941 §77 was superseded by the 1949 amendment to said section. S. L. 1949, p. 214, section 2, shown as section 77 in the 1949 pocket part to O. S. A., Title 26. That law requires that every precinct registrar shall deliver his precinct register to the secretary of the county election board within fifteen days after each state-wide general election, and that the secretary of the coun-

ty election board shall compile from said precinct registers a county registration book and file the same in the office of the county clerk. Protestant says that under that law, which became effective May 13, 1949, a state-wide general election was held, in September, 1949, the same being on State Question No. 343, and State Question No. 348, popularly referred to as the repeal question and the state bond issue, and that a state-wide general election means any election wherein the entire electorate of the entire state are eligible to vote on the same proposition. We are unable to agree with this contention.

26 O. S. 1941 §1 defines a general election, and therefrom it appears that that term denotes an election at which congressional representatives and state officers shall be elected, and provides for the holding of such elections every two years. Thus it appears that the vote of the people upon the state questions above referred to was not a general election, but a special election held solely for the purpose of enabling the people of the state to vote only upon the questions presented.

We therefore hold the initiative petition sufficient.

The court hereby fixes a period of three days within which a petition for rehearing may be filed herein.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, HALLEY, and JOHNSON, JJ., cocnur.