388 P.2d 290 (1963)
In re INITIATIVE PETITION NO. 272, STATE QUESTION NO. 409.
Roy TILLMAN, Len Yarbrough, Irma Finley and B.V. Voss, Appellants (Protestants),
v.
William N. CHRISTIAN, Secretary of State of the State of Oklahoma, Appellee (Proponents).
No. 40421.
Supreme Court of Oklahoma.
December 17, 1963.
Rehearing Denied January 10, 1964.
As Corrected January 22, 1964.
William C. Kessler, Oklahoma City, J.A. Rinehart, El Reno, for protestants.
V.P. Crowe, Paul McDaniel, Oklahoma City, for proponents.
*292 DAVISON, Justice.
In this proceeding, brought here by appeal from an order of the Secretary of State, the court is called upon to determine whether Initiative Petition No. 272 is sufficient, both numerically and legally, for submission to a vote of the people as State Question No. 409. The measure under challenge seeks to amend the Oklahoma Constitution by adding thereto, as Section 12, Article 23, a provision forbidding execution and application of union-management agreements which require as a condition of employment either membership in, or payment of charges to, a labor organization. The federal law, Sec. 14(b) of the National Labor Relations Act of 1947 (commonly known as the Taft-Hartley Law), 29 U.S.C. § 164(b), places within the reach of state prohibition such contractual arrangements between an employer and the exclusive bargaining agent. Retail Clerks International Association, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 83 S.Ct. 1461, 1464, 10 L.Ed.2d 678, 683. Appellants, who seek our declaration of the petition's invalidity, will be designated as "protestants"; the appellee will be called "proponents".
In conformity with the principles enunciated by this court in the case of In re Initiative Petition No. 23, State Question No. 38, 35 Okl. 49, 127 P. 862, 864, and In re Initiative Petition No. 249, 203 Okl. 438, 222 P.2d 1052, this cause was assigned to one of the referees with directions to accord protestants full relief by trial de novo and to report his findings of fact and conclusions of law. The many extended hearings before the referee terminated at the conclusion of protestants' evidence when proponents moved to find the proof insufficient, prima facie, to establish that the petition lacks the necessary number of valid signatures. The referee's report does find protestants' evidence insufficient to invalidate the petition.
The petition consists of 12,701 pamphlets containing a total of 212,700 signatures. According to the stipulation of the parties, the petition, which initiates a constitutional amendment, is required to bear that number of signatures thereon which equals 15 per centum of the highest number of votes cast for a state office at the last general election. Art. 5, Sec. 2, Oklahoma Constitution. Therefore, the present petition, to be numerically sufficient, must contain a minimum of 135,472 valid signatures. This number is admitted to equal the percentage of votes required by Art. 5, Sec. 2, supra, and the figure is correctly predicated upon the returns of the general election held in 1960  the general election next preceding the circulation and filing of this petition. The referee found that the petition bears 77,228 signatures in excess of the minimum number required by Art. 5, Sec. 2, supra. (212,700 minus 135,472). The burden devolved upon protestants to overcome, by competent evidence, the presumption that all signatures on the petition are genuine and the signers thereof qualified. In re Initiative Petition No. 253, State Question No. 357, Okl., 268 P.2d 844; In re Referendum Petition No. 130, State Question No. 395, Okl., 354 P.2d 400, 402.
At the hearings before the referee, protestants presented 104,835 challenges which were directed, on miscellaneous grounds, to 99,212 individual signatures upon the petition. After deducting challenges found to be prima facie untenable, the referee concluded that the total challenges presented fell below the minimum number of signatures protestants had to invalidate in order to show the petition numerically insufficient.
In their exceptions to his report protestants complain that the referee rejected their challenge to 211 signatures shown to have been placed on the affidavit page rather than on the signature page of the pamphlet. There was no evidence that any of the signatures which fell in this category were either false or the signers disqualified under the law. Nor did it appear that any of the signers failed or omitted to place opposite their name the data required by 34 O.S. 1961 § 2.
*293 We find no error in the referee's conclusion on the above point. The challenged signatures were free from invalidity. The law does not require strict observance of the provisions governing the initiative procedures. Substantial compliance therewith is deemed sufficient. 34 O.S. 1961 § 24; In re Referendum Petition No. 130, State Question No. 395, Okl., 354 P.2d 400, 402.
The defect advanced by protestants is in the nature of a technical error which does not operate to render the signatures invalid. While in the case of In re Initiative Petition No. 176, State Question No. 253, 187 Okl. 331, 102 P.2d 609, 610, 611, signatures on the affidavit page were stricken by the referee, the court did not make therein a pronouncement upon the specific point raised here, but merely "accepted," pro forma, the unchallenged conclusions and findings of the referee. The cited case thus affords no authority and basis for protestants' contention that the referee's conclusion herein is in conflict therewith.
The referee concluded that the verity of a circulator's affidavit does not stand destroyed by the proof showing one or more signatures on a pamphlet to be false or forged. According to protestants' argument, the circulators are required by law to be present when signatures are placed on the petition, 34 O.S. 1961 § 6, and, therefore, they must, as a matter of law, be charged with knowledge of the fact that a person has placed on the petition a name or names other than his own. Protestants urge that when a circulator falsely verifies that each of the signers has signed his own name, none of the names on such petition should be counted unless affirmatively proven by proponents to be genuine.
If the circulator's affidavit is "willfully, corruptly and intentionally" false and is impeached for fraud in its execution, the probative value of such affidavit is destroyed and none of the signatures on the sheet will be counted unless affirmatively shown to be genuine. However, in order to invalidate all signatures upon a pamphlet, more proof is required than the presence of a single false signature or of some false signatures on the sheet. Protestants must go further and establish intentional fraud, wilful misconduct or guilty knowledge on the part of those who circulated the questioned pamphlets. The element of conscious and deliberate fraud must be present. Mere falsity of a single signature, or some signatures, on a pamphlet, does not of itself render the circulator's affidavit thereon fraudulent nor does it operate to taint such affidavit by guilty knowledge. The phrase "guilty knowledge" is synonymous with the term scienter. It means culpable ignorance of the truth or conscious awareness of falsity. Fraud or guilty knowledge will not be imputed to the circulator, but must be affirmatively established. In re State Question No. 138, Initiative Petition No. 89, 114 Okl. 285, 244 P. 801, 804. In re Initiative Petition No. 224, 197 Okl. 432, 172 P.2d 324, 326; see also Sturdy v. Hall, 204 Ark. 785, 164 S.W.2d 884, 887; Pafford v. Hull, 217 Ark. 734, 233 S.W.2d 72, 74.
In the absence of evidence of wilful fraud or guilty knowledge on the part of a circulator of an initiative petition of the fact that one person has signed the name of another or others to said petition, only the names shown to have been so signed will be rejected.
No evidence of fraud or guilty knowledge on this point was found by the referee, nor do we find any.
Protestants next complain that the referee declined to strike as invalid signatures on those pamphlets where the notary who acknowledged the circulator's oath (a) listed neither the street nor complete post office address, but supplied solely the city of his residence either as Tulsa or Oklahoma City; (b) where the notary's street address was written illegibly; and (c) where the notary listed neither a street address nor the city of his residence.
The provisions of 34 O.S. 1961 § 6, require the officer before whom a circulator gives an oath to state his "post office address" on the acknowledgment. Strict compliance *294 with this requirement is, however, not necessary. Failure to list a post office address by a notary does not render the acknowledgment invalid. In In re Initiative Petition No. 224, 197 Okl. 432, 172 P.2d 324, 327; In re State Question No. 138, Initiative Petition No. 89, 114 Okl. 285, 244 P. 801, 804. We therefore approve the referee's conclusion that these defects did not invalidate the signatures questioned on that basis.
Protestants also except to that part of the referee's report wherein the following questioned signatures were found to be free from "vitiating infirmity:" (a) on Pamphlets where circulators in Tulsa or Oklahoma City gave only a post office box address (instead of a street address); and (b) on pamphlets whereon the circulators (in Tulsa or Oklahoma City) gave only an office building address. According to protestants, a circulator in Oklahoma City or Tulsa should be compelled to supply his address with the same exactitude as that which is required in those two cities of an individual signer. In the case of In re Initiative Petition No. 142, etc., 176 Okl. 155, 55 P.2d 455, 458, we held that an individual signer in Oklahoma City and Tulsa must include the street name and house number when giving his post office address.
However, under the terms of 34 O.S. 1961 § 6, a circulator is required to show on the affidavit only his "post office address," whereas an individual signer must, if residing in the city, list the street name and number. 34 O.S. 1961 § 1. As stated by this court in the case of In re Initiative Petition No. 142, etc., 176 Okl. 155, 55 P.2d 455, 458, nothing more is required than what section 6 prescribes, and nothing less than that constitutes substantial compliance with the statute. Section 6 does not require the circulator to give his street address. The referee's conclusion, which accords with our pronouncements, is therefore approved.
The form of initiative petition is assailed as tainted by the use of a single red and blue stripe imprinted upon each side of the front page. According to the argument, these stripes tended to create in the minds of the public an improper association or identification of the proposed measure with a patriotic cause. Protestants urge that the use of these devices was intended to procure for the proponents a preferred status or undue advantage in violation of the equal protection clause. We are also urged that initiative procedures, which must be viewed as an integral part of the state-controlled elective process, are federally protected against corruption and abuses, under the XIV Amendment to the United States Constitution.
The use of special markings, emblems or other devices upon an initiative petition is neither sanctioned nor specifically forbidden by Oklahoma Statutes or Constitution. The prohibitory scope of the XIV Amendment's equal protection clause extends no further than, and may not be applied beyond, the concept of invidious discrimination. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563; Morey v. Doud, 77 S.Ct. 1344, 1349, 354 U.S. 457, 1 L.Ed.2d 1485.
Unequal application of state statutes, fair on their face, to those who are entitled to be treated alike does not necessarily constitute a denial of equal protection, unless there is shown to be present in such action an element of intentional or purposeful discrimination. A discriminatory purpose is not presumed. It must appear either on the face of the action taken with respect to a particular class or person, or it may be shown by extrinsic evidence. There must, however, be a "showing of a `clear and intentional discrimination'." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. While we do readily conceive that the use or application of unsanctioned devices may in some instances operate to corrupt the state-controlled initiative processes, we find no evidentiary basis in this case upon which to declare the present petition tainted by conduct or practice constituting a clear and intentional discrimination *295 or corruption of the election process.
We therefore hold that the record does not support protestants' claim asserting violation of a federally protected "right."
The petition is declared, sufficient, both numerically and as to form.
BLACKBIRD, C.J., HALLEY, V.C.J., and WELCH, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.