In re REFERENDUM PETITION NO. 18,
STATE QUESTION NO. 437.

Sam GIBSON, Boston E. Thomas, J. R. Evans, Betty L. McElroy and Elgie Graham, Appellants,

v.

James M. BULLARD, Secretary of State of the State of Oklahoma, Appellee.

No. 41933.

Supreme Court of Oklahoma.

July 27, 1966.

As Corrected Aug. 2, 1966.

Rinehart, Rinehart & Rinehart, by Jim A. Rinehart, El Reno, for appellants.

Gene C. Howard, Tulsa, Jack M. Short, Oklahoma City, for appellee.

JACKSON, Vice Chief Justice:

There is involved here an appeal from the decision of the Secretary of State, the

Honorable James M. Bullard, holding Referendum Petition No. 18, sufficient for submission to a vote of the people State Question No. 437.

Referendum Petition No. 18 seeks to submit to a vote of the people the question of the approval or disapproval of House Bill No. 669, Title 14, § 2, O.S.Supp.1965, enacted by the 30th Legislature of the State of Oklahoma on July 21, 1965. House Bill No. 669, divides the State of Oklahoma into six congressional districts and fixes the boundaries thereof.

Referendum Petition No. 18 was filed in the office of the Secretary of State on October 19, 1965. The pertinent portions of the petition are as follows:

"The question we herewith submit to our fellow voters is: Shall the following bill of the legislature be approved?

"ENROLLED HOUSE BILL NO. 669

"AN ACT RELATING TO CONGRESSIONAL DISTRICTS: FIXING BOUNDARIES: PROVIDING ACT SHALL NOT AFFECT MEMBERSHIP OF GOVERNMENTAL ENTITIES WHOSE MEMBERSHIP IS BASED ON CONGRESSIONAL DISTRICTS HERETOFORE CREATED BY LAW: REPEALING 14 O.S.1961 § 1; MAKING PRESENT LAW APPLICABLE IF ACT NOT EFFECTIVE PRIOR TO NEXT CONGRESSIONAL OFFICE FILING DATE, AND PROVIDING FOR SEVERABILITY."

Trial de novo of this cause was conducted by the Referee of this Court on July 11 and 12, 1966. In re Initiative Petition No. 23, State Question No. 38, 35 Okl. 49, 127 P. 862. A total of 107 documents and the testimony of two witnesses was submitted in evidence.

At the trial de novo facts were stipulated to and agreed to as being true as follows: (a) Referendum Petition No. 18, comprising 10 bound volumes contains 92,338 signatures. (b) The total vote cast for all five state offices by the 1964 General Election was 949,330. (c) Under the provisions of Article 5, § 2, Constitution of the State of Oklahoma the Referendum Petition must contain signatures totalling five per cent of the total vote cast for State Offices at the 1964 General Election. (d) The total number of valid signatures required to sustain the validity of Referendum Petition No. 18 is 47,466.5. (e) In order to sustain their challenge appellants are required to establish the invalidity of 44,871.5 signatures.

At the trial de novo it was admitted that the total challenges interposed by the appellants were less than 50,000 signatures. As we view this case it is not necessary to determine with mathematical certainty the exact number of signatures challenged if the challenges are less than 50,000 signatures.

The challenges interposed are on miscellaneous grounds but appellants challenge a total of 26,909 signatures on grounds hereinafter discussed and which are decisive of this controversy.

Appellants do not contend that these 26,909 signatures are invalid because of irregularity in signing. They concede that these parties signed the petition properly, listed their addresses and furnished the data required by 34 O.S.1961, Sec. 2. They contend that other individuals signing the same petition failed to list their addresses and furnish the data required by Title 34 O.S.1961, § 2. It is their contention that the affidavit of the circulator wherein he states, "I believe that each has stated his name, post office address, and residence correctly" is false and being false as to one or more signers of the petition may be considered false as to the remaining signatures on the petition requiring the invalidation of the entire petition. See form of oath required of circulators of Referendum Petitions, 34 O.S.1961, Sec. 6.

An example of the position of the appellants is reflected in a petition circulated in Cleveland County shown at page 4, Vol. 1, of the Referendum Petition. Forty in-

dividuals signed this particular petition. Four signers failed to list the city of their residence. Their signatures were of course subject to challenge. In re Referendum Petition etc. on House Bill No. 50?. 78 Okl. 47, 186 P. 485, but appellants i..terposed a challenge to all forty signatures.

In the first paragraph of the syllabus in In re Initiative Petition No. 176, State Question No. 253, 187 Okl. 331, 102 P.2d 609, we held:

"Where no postoffice address is written or otherwise plainly indicated after the signature of one or more signers of an Initiative Petition, such signatures should not be counted in determining whether the petition contains the requisite number of signers. But all other signatures on the same pamphlet, unless invalidated for some other reason, should be counted."

■ The right to petition for a vote of the people by Initiative and Referendum provided by Art. 5, § 2, of the Constitution of Oklahoma is a sacred right to be carefully preserved.

In Prairie Oil & Gas Co. v. District Court etc., 71 Okl. 32, 174 P. 1056, this court said:

"* * * Section 1, art. 5, of the Constitution, provides that the legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives, but reserved to the people the power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the Legislature, and also reserved in the people the power at their option to approve or reject at the polls any act of the Legislature. * * *"

■■ These rights are not to be lightly brushed aside on mere technicalities. The law does not require a strict compliance with the provisions of our Constitution and statutes governing initiative and referendum procedures. Substantial compliance is deemed sufficient. In re Initiative Petition No. 272, State Question No. 409, Okl.,

388 P.2d 290; In re Referendum Petition No. 130, State Question No. 395, Okl., 354 P.2d 400.

The question presented was before this Court in In re Initiative Petition No. 272, State Question No. 409, 388 P.2d 290, wherein the contention was made that proof of the falsity of a portion of the signatures on a petition standing alone established the falsity of the affidavit of the circulator and vitiates all signatures certified by him. In holding the contention unsound this court said:

"* * * Protestants urge that when a circulator falsely verifies that each of the signers has signed his own name, none of the names on such petition should be counted unless affirmatively proven by proponents to be genuine.

"If the circulator's affidavit is 'wilfully, corruptly and intentionally' false and is impeached for fraud in its execution, the probative value of such affidavit is destroyed and none of the signatures on the sheet will be counted unless affirmatively shown to be genuine. However, in order to invalidate all signatures upon a pamphlet, more proof is required than the presence of a single false signature or of some false signatures on the sheet. Protestants must go further and establish intentional fraud, wilful misconduct or guilty knowledge on the part of those who circulated the questioned pamphlets. The element of conscious and deliberate fraud must be present. Mere falsity of a single signature, or some signatures, on a pamphlet, does not of itself render the circulator's affidavit thereon fraudulent nor does it operate to taint such affidavit by guilty knowledge. The phrase 'guilty knowledge' is synonymous with the term scienter. It means culpable ignorance of the truth or conscious awareness of falsity. Fraud or guilty knowledge will not be imputed to the circulator, but must be affirmatively established. In re State Question No. 138, Initiative Petition No. 89, 114 Okl. 285, 244 P. 801, 804. In re Initiative

Petition No. 224, 197 Okl. 432, 172 P.2d 324, 326; see also Sturdy v. Hall, 204 Ark. 785, 164 S.W.2d 884, 887; Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72, 74.

"In the absence of evidence of wilful fraud or guilty knowledge on the part of the circulator of an initiative petition of the fact that one person has signed the name of another or others to said petition, only the names shown to have been so signed will be rejected."

■ There is no evidence of any corruption, wilful misconduct or guilty knowledge tainting the Referendum processes employed in the circulation of the Petition, the procurement of signatures thereon, or the preparation of the Petition for filing in the office of the Secretary of State.

The text of the petition is not misleading nor deceptive in language or form.

The Maximum number of signatures challenged by appellants is 50,000. In order to establish the Petition to be numerically insufficient appellants must prove by competent evidence the invalidity of 44,871.5 signatures. Deducting the 26,909 challenges which we have held to be without merit from the gross total challenges of 50,000 reduces the number of challenges to 23,091. If the remaining 23,091 challenges were all sound the signatures stricken would still be 21,780.5 less than the minimum of 44,871.5 required by the appellants to establish the Petition to be numerically insufficient. In the interests of expediting an early decision in this matter we have not minutely examined these remaining challenges. Some appear to be sound. Others without merit. As we view the matter there is no need for further discussion of these remaining challenges.

Referendum Petition No. 18 is declared sufficient as to form and numerically sufficient to submit State Question No. 437 to a vote of the people.

HALLEY, C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.