2000 OK 47

**In re: INITIATIVE PETITION NO. 365
STATE QUESTION NO. 687.**

**No. 94,155.**

Supreme Court of Oklahoma.

June 20, 2000.

Larry L. Oliver, Larry L. Oliver & Associates, P.C., Tulsa, Oklahoma, For Protestants.

D. Kent Meyers, Oklahoma City, J. Lawrence Blankenship, Roger A. Strong, Paige S. Bass, Crowe & Dunlevy, Oklahoma City, Oklahoma, For Protestants Tom Hargus and James T. Tyler.

Marc Edwards, Heather L. Hintz, Robert N. Sheets, Oklahoma City, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, Oklahoma, For Proponents.

WINCHESTER, J.

¶ 1 The protestants against Initiative Petition No. 365, State Question No. 687, move for summary disposition of the petition asking that we find it invalid as a matter of law. They claim that the petition is fatally defective on its face because the names of the proponents are not in the proper location on the petition, nor are they identified as proponents in conformance with 1994 Okla.Sess. Laws, ch. 147, § 2, codified in 34 O.S.Supp. 1999, § 2.[1] In addition, the protestants filed two related motions. They moved to quash the "Notice of the Filing of State Question Number 687, Initiative Petition Number 365," published in the *Daily Oklahoman* on January 23, 2000, because the petition did not identify the proponents. The protestants also moved to strike Janet Halliburton and the Oklahoma Coalition Against Cockfighting, Cynthia Armstrong and Jenice Keisling as parties to the legal challenge to the petition. We hold that the petition is in substantial compliance with the statute, and we deny the protestants' motions.

¶ 2 Janet Halliburton and Oklahoma Coalition Against Cockfighting filed Initiative Petition 365 (the petition) with the Oklahoma Secretary of State on September 13, 1999. The petition seeks to prohibit cockfighting, making it a felony to hold or encourage a cockfight or to keep birds for fighting purposes and also making it a misdemeanor to be a spectator at a cockfight. In a letter to this Court dated January 10, 2000, the Secretary of State, Mike Hunter, informed the Court that he had received twelve boxes of signature pamphlets for the petition from Janet Halliburton, Oklahoma Coalition Against Cockfighting, P.O. Box 780378, Oklahoma City, Oklahoma, 73178. Pursuant to 34 O.S.Supp.1999, 8(C), the secretary certified the total number of signatures from the 5,388 pamphlets to be 99,309. The secretary also certified the total number of votes cast, which was 873,585, for the state office receiving the highest number of votes at the last general election, which was for the office of governor. The Oklahoma Constitution, Article 5, § 2, provides that eight percent of the legal voters can propose any legislative mea-

---

1. § 2. Initiative Petition—Form—Time for Filing. The form of initiative petition shall be substantially as follows:
INITIATIVE PETITION
To the Honorable _____, Governor of Oklahoma (or To the Honorable _____, Mayor, Chairman of County Commissioners, or other chief executive officers, as the case may be, for the city, county or other municipality): We, the undersigned legal voters of the State of Oklahoma (and of the district of _____, county of _____, or city of _____, as the case may be), respectfully order that the following proposed law (or amendment to the constitution, ordinance, or amendment to the city charter, as the case may be) shall be submitted to the legal voters of the State of Oklahoma (or of the district of _____, county of _____, or city of _____, as the case may be) for their approval or rejection at the regular general election (or regular or special city election), to be held on the _____ day of _____, 19___, and each for himself says: I have personally signed this petition; I am a legal voter of the State of Oklahoma (and of the district of _____, county of _____, city of _____, as the case may be); my residence or post office are correctly written after my name. The time for filing this petition expires ninety days from (insert date when petition is to be opened for signatures). (This for State initiative. For county, city, or other municipality the length of time shall be ninety days.) The question we herewith submit to our fellow voters is: Shall the following bill (or proposed amendment to the Constitution or resolution) be approved? (Insert here an exact copy of the title and text of the measure.) Name and Address of Proponents (not to exceed three)
Name _____ Residence _____
Post Office _____ If in the city, street and number.
(Here follow twenty numbered lines for signatures.)

sure. The eight percent is based upon the total number of votes cast at the last general election for the state office receiving the highest number of votes at that election. Therefore, the proponents needed 69,887 signatures to bring the matter to a vote of the people.

¶ 3 On January 23, 2000, the Secretary of State published notice of the filing of the petition. The publication gave notice that any citizen of the State of Oklahoma could file a written protest of the petition or a written objection to the signature count in the office of the Clerk of the Supreme Court of the State of Oklahoma, with a copy directed to the proponents of the petition. This notice was a publication of an order of this Court. That order recognized Janet Haliburton and the Oklahoma Coalition Against Cockfighting as the proponents of the petition. The order and its contents are required by 1992 Okla.Sess.Laws, ch. 92, § 7, codified in 34 O.S.Supp.1999, 8.

¶ 4 The petition places the name of the proponents after the lines for signatures instead of before, which is the statutory placement, and the proponents are not specifically designated proponents. The issue is whether the failure of the proponents of an initiative petition to identify themselves as proponents and the failure to place this information before the signature lines is significant enough to invalidate the whole initiative process. Title 34 provides the general provisions for initiative and referendum. Section 2 provides the form for the initiative petition. That section begins, "The form of initiative petition shall be substantially as follows...." In construing § 2, this Court has held that the procedure prescribed by the statute is not mandatory, but is sufficient if substantially followed. *In re Initiative Petition No. 176,* 1940 OK 214, 102 P.2d 609, 612. That case explains that, "If the end aimed at can be attained the procedure followed will be sustained. Clerical and mere technical errors are to be disregarded." *In re Initiative Petition No. 176,* 1940 OK 214, 102 P.2d at 612. Citing *In re Initiative Petition No. 176,* and *In re Initiative Petition No. 224,* 1946 OK 215, 197 Okla. 432, 172 P.2d 324, this Court reaffirmed that substantial compli-

ance with the provisions of the statutes with reference to initiative petitions is sufficient. *In re Initiative Petition No. 249,* 1950 OK 238, ¶ 8, 222 P.2d 1032, 1035.

¶ 5 *In re Initiative Petition No. 176* involved questioned signatures. On many pamphlets, the person who signed line number 1, wrote out his residence, followed by the name of the city or town, written in full, followed by the abbreviation "Okla." The subsequent signers on the pamphlet, when from the same city or town, would indicate that by a ditto mark under the name of the city or town in the line above. After those pamphlets were delivered to the County Commissioner of Oklahoma County, who supervised the circulation of the petition, either he or one of his clerks or secretaries wrote in the name of the city or town and the state over the ditto marks before filing the petition with the Secretary of State. The protestants wanted all of these names stricken. They contended that where the addresses of the signers did not appear on the pamphlets when verified by the circulator, and were supplied or written in by some person after the pamphlet had left the possession of the circulator, the signatures did not substantially comply with § 2. Section 2 required the form of the petition to include that "my residence or post office are correctly written after my name." In addition, the protestants claimed that the pamphlets did not substantially comply with § 6 of title 34, which required each circulator by affidavit to state that "I believe that each [signer] has stated his name, postoffice address, and residence correctly...." The Court held that in the absence of evidence of willful fraud or guilty knowledge on the part of the circulator, the signatures should be counted unless the residence and postoffice addresses of the signers were entirely supplied or written in after the petitions were verified by the circulator. *In re Initiative Petition No. 176,* 1940 OK 214, 102 P.2d at 611–612.

¶ 6 Before the 1992 amendment to § 2, the statute provided that the petition, after including an exact copy of the title and text of the measure being submitted to the voters, must contain the following:

"Name ——————— Residence ——————— Post Office ——————— If in the city, street and number.

(Here follow forty numbered lines for signatures.)"

The 1992 amendment to § 2, 1992 Okla.Sess. Laws, ch. 92, § 2, added above the line for name and residence: "Name and Address of Proponents (not to exceed three)."[2] A proponent is one who offers or proposes something. Since the statute adds the parenthetical "not to exceed three," we may infer that the legislature did not require that all proponents of an initiative petition include their names and addresses. The protestants argue from the fact that the legislature chose to make the word "proponent" plural, that at least two proponents must be named. We do not agree. A petition may have only one proponent, and that proponent need not find another to meet the requirements of the statute.

¶ 7 The protestants contend that the names of the proponents were not included on the petition, as required by § 2, because the name, Janet Halliburton, and the organization name, Oklahoma Coalition Against Cockfighting, were placed after the signatures. The protestants argue that the signature lines are not a part of the petition because 1992 Okla.Sess.Laws, ch. 92, § 3, codified at 34 O.S.Supp.1999, 3, provides in pertinent part: "Each initiative petition and each referendum petition shall be duplicated for the securing of signatures, and each sheet for signatures shall be attached to a copy of the petition. Each copy of the petition and sheets for signatures is hereinafter termed a pamphlet."

■ ¶ 8 Section 2 begins, "The form of initiative petition shall be substantially as follows. . . ." It ends, "Here follow twenty numbered lines for signatures." The provisions in § 3 do not exclude the signatures from being a part of the petition. The purpose of the requirement to attach the signatures is not to differentiate between the petition and the signatures. The purpose is to assure that the signature sheets are attached so that the voters are able to conveniently examine the exact wording of the proposal.

¶ 9 Using the rule cited from *In re Initiative Petition No. 176*, we review the facts of the matter before us. The last lines of the petition, on the bottom of the page numbered for twenty signatures, read:

RETURN THIS PETITION TO:

Janet Halliburton

Oklahoma Coalition Against Cockfighting

P.O. Box 780378

Oklahoma City, OK 73178

To be valid, this information must substantially comply with the requirements of § 2 of title 34.

¶ 10 The protestants argue that the legislative intent in requiring the identity of the proponents on the face of the initiative petition was to publicize who is legally responsible for the proposed petition. Although this is possible, it is merely speculation. It is also possible that the legislature intended to make it easier for the Secretary of State to immediately identify the proponents. The same year § 2 was amended, § 8 was also amended. The amendment to § 8 added that the proponents of an initiative petition could withdraw the petition upon written notification to the Secretary of State any time before its final submission. Upon the proper notification from the proponents, the Secretary of State is allowed to begin the counting process before the ninety day period of obtaining signatures has ended. 1992 Okla. Sess.Laws, ch. 92, § 7, codified at 34 O.S.Supp.1999, 8. The amendment to § 8 lends support to the inference that the legislature intended the § 2 amendment to aid the Secretary of State in identifying the proponents. Identification of the proponents by the Secretary of State to withdraw the petition before the ninety day period has elapsed is not an issue in this case.

¶ 11 Section 8 requires that when a citizen desires to circulate a petition initiating a proposition of any nature, that person must

**2.** In addition, the number of lines was changed from forty to twenty: "(Here follow twenty numbered lines for signatures.)"

file a true and exact copy of the same in the office of the Secretary of State, before it is circulated or signed by electors. By the definition set out above, such an action makes that citizen the proponent of the measure. The Secretary of State on September 13, 1999, sent Janet Halliburton, Oklahoma Coalition Against Cockfighting, a letter acknowledging receipt of the petition pursuant to § 8, and informed them of the date, December 13, 1999, that the signed petition pamphlets would become due. On January 10, 2000, the Secretary of State sent his certification to this Court that twelve boxes of signature pamphlets for State Question Number 687, Initiative Petition Number 365, were received from Janet Halliburton, Oklahoma Coalition Against Cockfighting. The clear implication of this identification is that these were the proponents of the petition, and their names were correctly identified in this Court's order, which was subsequently published as notice to all. No other party came forward claiming to be the proponents. The protestants argue that the Secretary of State made an incorrect assumption. We do not agree.

¶ 12 Regarding the petition itself, the fact that the proponents' names were included at the very end of the signatures instead of before the signatures is a technical violation not a substantive one. In addition, failing to include "Name and Address of Proponents" above the names of Janet Halliburton and Oklahoma Coalition Against Cockfighting, although making their position as proponents clearer, is also a technical violation since the very title of the organization and the fact that the pamphlets were to be returned to them implies that they were the proponents of the petition. If there were any doubt, checking with the Secretary of State, who recognized Halliburton and the group as proponents, would clarify that doubt. Given the facts, the omission of the phrase "Name and Address of Proponents" is not a substantive violation.

¶ 13 The protestants, Hargus and Tyler, in their brief in support of the motion, characterize *Community Gas and Service Co. v.*

*Walbaum,* 1965 OK 118, 404 P.2d 1014, as an analogous case. In that case a municipal initiative petition was held invalid because it did not contain the warning clause required by 34 O.S.1961, 3, informing the signors, "It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter." The Court in *Walbaum* observed that the evident purpose of the warning clause was to keep the petition free from the taint of duplicate, false, fraudulent and unauthorized signatures. The Court concluded that the clause was essential to guard against fraud, corruption or deception in the initiative and referendum process, and was therefore an indispensable requirement. The Court held that a failure to substantially comply with that requirement was fatal.

¶ 14 We do not find *Walbaum* to be analogous to the facts concerning the petition we are considering. A failure to include the word "proponents" before the names of the proponents, and the placing of the names of the proponents after the signature lines instead of before, are not essential to guard against fraud, corruption or deception in the initiative and referendum process. The purpose of the process is that the people be able to exercise the legislative power reserved by them and guaranteed to them by Article 5, § 1 of this state's constitution. On its face, it would appear that 99,309 voters signed the petition after considering the measure and desiring to present it to their fellow voters for an election. This Court will be careful not to thwart that process for an error that is neither fraudulent, corrupt nor deceptive. We observe that the protestants knew well who the proponents in this process were, in spite of their objections to the contrary.

¶ 15 We do not find any of the arguments of either of the two groups of protestants on this motion to be persuasive to support a summary disposition of this petition. This finding also disposes of the motion to quash and the motion to strike, because the basis for the arguments is the same.[3] Accordingly,

---

**3.** The motion to strike the names of Jenice Keis-

ling and Cynthia Armstrong appears to be based

the motion for summary disposition, the motion to quash and the motion to strike are DENIED.

¶ 16 HARGRAVE, V.C.J., HODGES, LAVENDER, OPALA, KAUGER, and BOUDREAU, JJ., concur.

¶ 17 WATT, J., dissents.

¶ 18 SUMMERS, C.J., not participating.

on an Entry of Appearance filed February 4, 2000. The attorneys for the proponents filed this document that read: "The undersigned attorneys hereby appear for Janet Halliburton and the Oklahoma Coalition Against Cockfighting in the case." Keisling and Armstrong are not mentioned in the body of the document. Below the identification of the attorneys, is the wording, "Attorneys for Jenice Keisling and Cynthia Armstrong." Such identification does not make Keisling and Armstrong proponents in this case. We regard that information as surplusage. Keisling and Armstrong filed a document objecting to the count of signatures made by the Secretary of State. We leave the determination of their status to object to the count of signatures to the merits of the case.